[No. 1868–2.   Division Two.   July 7, 1977.]

SWISS BACO SKYLINE LOGGING, INC., *Appellant,* v.
EMIL HALIEWICZ, ET AL, *Respondents.*

*Jerome L. Buzzard* and *Buzzard & Glenn, P.S.,* for appellant.

*Charles Nomellini, Foster, Pepper & Riviera, James A. Smith, Jr., Bogle & Gates,* and *Delbert Miller,* for respondents.

PETRIE, C.J.—This is a dispute over proceeds from the sale of two federal timber contracts once owned by the plaintiff, Swiss Baco Skyline Logging, Inc. The complaint alleged that plaintiff's former president, Emil Haliewicz, and one William Bellm d/b/a General Log and Timber Company, acted fraudulently and without authority in selling the two timber contracts and in converting the proceeds to their own use. More pertinent to this appeal are plaintiff's further allegations that (1) the Bank of California, N.A., negligently deposited and subsequently disbursed the proceeds of the sale, and (2) the Washington Mutual Savings Bank negligently honored checks representative of a portion of those proceeds.

After extensive discovery, briefing and oral argument, the plaintiff and the two defendant banks moved for summary judgment. The trial court entered summary judgment orders in favor of the Bank of California and Washington Mutual, dismissed with prejudice plaintiff's claims against both banks, and, pursuant to CR 54(b), designated those orders as final judgments. Swiss Baco appeals from these judgments. We affirm the judgment entered in favor of the Bank of California, and we partially affirm and partially reverse the judgment entered in favor of Washington Mutual Savings Bank.

The determinative facts are not seriously in dispute. However, the parties do not agree on the legal conclusions which flow from those facts.

In April and August of 1973, Swiss Baco, through its then president, Emil Haliewicz, purchased two United States Forest Service timber contracts, known respectively as the Calasit and Sitkum contracts. On October 31, 1973, Haliewicz resigned as plaintiff's president but continued to negotiate for the sale of the two timber contracts. After his resignation as president, and pursuant to a written agency agreement, Haliewicz was expressly authorized to continue negotiating for the sale of the Calasit contract. Swiss Baco contends, however, that it was unaware of Haliewicz's continuing efforts concerning the Sitkum contract until just prior to commencing this lawsuit.

In the course of his negotiations, Haliewicz came into contact with William Bellm, principal of General Log and Timber Co. In December of 1973, Bellm took primary responsibility as broker in the proposed sale of the two timber contracts to a Portland organization known as West Coast Orient Timber Co. The parties' negotiations culminated in a sales agreement under the terms of which West Coast Orient agreed to pay a cash advance of $250,000 on the Calasit contract and $85,000 on the Sitkum contract.[1]

---

[1] The amount subsequently advanced by West Coast Orient also included $13,000 to cover the cost of two bid bonds.

In order to complete the sale, a "third party agreement" had to be executed and filed with the United States Forest Service in which West Coast Orient agreed to assume Swiss Baco's contract obligations. Before the Forest Service would accept this agreement, it was necessary that Swiss Baco certify that the party representing it was actually president at the time of certification. The secretary of Swiss Baco supplied the needed authorization even though he knew that Haliewicz had resigned as president almost 2 months earlier.

After the preliminary negotiations were completed, West Coast Orient proceeded to transfer the cash advance in accordance with the instructions from Bellm and Haliewicz. The negotiating parties agreed that West Coast Orient would have its bank, United States National of Oregon, "wire" the funds to Bellm's Seattle bank, the Bank of California. Bellm, who had been an established customer at the Seattle branch of the Bank of California, opened a new account for the sole purpose of receiving the contract sales proceeds. This account bore the name "General Log and Timber Co." and was numbered "04 01972–5." Bellm instructed West Coast Orient's accounting department to wire the cash advance to this account.

United States National wired the appropriate sums to the San Francisco branch of the Bank of California. The terms of that communication have not been made a part of the record, but we do know that the funds were subsequently transferred from San Francisco to Bellm's Seattle account pursuant to the following interbranch credit wire:

> 1177 WE CREDIT YOU 348,000.00 ATTN ROBERT JASPER FOR ACCT GENERAL LOG AND TIMBER CO AND SWISS BACO SKYLINE LOGGING A/C N BR 004 01972 5 [sic] BY ORDER WEST COAST ORIENT AND THEIR INTERSTATE AND GOING BR REMTD BY U S N/B PORT VALUE TODAY.

The message concluded with the notation:

> 04–01972–5
> CREDIT GENERAL LOG AND TIMBER CO
> OR 615 W LEE
> PAY SEATTLE WA xxxxxxx 98119

On the day that the Seattle branch of the Bank of California received this credit wire, Bellm and Haliewicz went to the bank's office, and Bellm introduced Haliewicz to Robert Jasper, a bank officer, as the owner of Swiss Baco. Bellm and Haliewicz thereupon instructed Mr. Jasper to disburse a portion of the funds in the form of cashier's checks. Pursuant to those instructions, checks were issued in the following manner:

1. Check No. 04 39339, Remitter "General Log and Timber Co." payable to the order of "Emil Haliewicz, Swiss Baco Skyline Logging, Inc." in the amount of $48,000.00, dated December 28, 1973.
2. Check No. 04 39352, Remitter "General Log and Timber Co." payable to the order of "Emil Haliewicz" in the amount of $80,000.00, dated December 28, 1973.
3. Check No. 04 39357, Remitter "General Log and Timber Co." payable to the order of "Emil Haliewicz, Swiss Baco Skyline Logging, Inc." in the amount of $120,000.00, dated December 28, 1973.
4. Check No. 04 39341, Remitter "General Log and Timber Co." payable to the order of "Joe A. Tudor" in the amount of $9,000.00 dated December 28, 1973.
5. Check No. 04 39340, Remitter "General Log and Timber Co." payable to the order of "Joe A. Tudor" in the amount of $12,500.00 dated December 28, 1973.

Upon receipt of these checks, Haliewicz drove to the Olympia branch of Washington Mutual Savings Bank, where he maintained a personal savings account. He presented check No. 39339 to a teller and requested that $40,000 be deposited to his savings account, $2,000 be returned to him in cash and the remaining $6,000 be exchanged for a draft made payable to Seattle–First National Bank. He endorsed the check by printing the words "Swiss Baco Skyline Logg. Inc." on the reverse side and signing his name below that. The teller, who knew Mr. Haliewicz, consulted with the bank manager before taking the check, and she was instructed "to call the Bank of California." She called "for a check verification" and was informed by a Bank of California employee that, of course,

they would honor their own cashier's check. The teller thereupon took the check and applied the funds pursuant to Haliewicz's request. She did not question Haliewicz or the Bank of California regarding Haliewicz's authority to cash this check.

Check No. 39352 was kept by Haliewicz and later converted to bank checks which were placed in a safe deposit box. Check No. 39357, made payable to "Emil Haliewicz, Swiss Baco Skyline Logging, Inc.", was endorsed "Emil Haliewicz" and delivered to the then president of Swiss Baco, Lazart Wracsaricht. He, in turn, stamped the check "For deposit only to the account of: Swiss Baco Skyline Logging, Inc.", placed his signature below and deposited it in Swiss Baco's Seattle–First National Bank account. The remaining two checks were delivered to another party from whom Haliewicz had allegedly borrowed funds used to pay the Sitkum contract surety bond.

On January 24, 1974, Haliewicz returned home from a trip abroad and found a United States Forest Service check in the sum of $19,000 made payable to the order of "Swiss Baco Skyline, 2416 Holly Lane, Olympia, Wa 98501." This check represented a refund of the surety deposit required on the Sitkum contract. It bore Haliewicz's home address because that continued to be the registered corporate office of Swiss Baco even though Haliewicz had resigned as president. Haliewicz took this check to the Olympia branch of Washington Mutual and purchased a $19,000 certificate of deposit in his own name. He endorsed the check "Swiss Baco Skyline" on the reverse side and signed his name.

On appeal to this court, Swiss Baco initially contends that the Bank of California owed a duty to the plaintiff to exercise due care in the deposit and disbursement of the contract proceeds forwarded to it and, by breaching that duty, is subject to liability for negligence.[2] We conclude

[2]RCW 62A.4–103(1) provides:

"The effect of the provisions of this Article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good

that, under the circumstances of this case, the trial court was correct in holding that the Bank of California owed no duty to Swiss Baco.

■■ Absent a statutory or common–law rule which imposes a duty upon the defendant to refrain from the complained of conduct and which is designed to protect the plaintiff against harm of the same general character, an action in negligence will not lie. *See Rikstad v. Holmberg,* 76 Wn.2d 265, 456 P.2d 355 (1969). Swiss Baco contends that the Bank of California owed it a duty because it was a "customer" of the bank. A bank does owe a duty to its "customers" to use due care in the issuance and payment of checks on customers' accounts. RCW 62A.4–401, .4–402. Swiss Baco, however, was not a "customer" of the Bank of California, because it did not have an account with the defendant bank nor did the Bank of California agree "to collect items" for Swiss Baco.

RCW 62A.4–104(e) defines "Customer" as

any person *having an account* with a bank *or* for whom a bank has *agreed to collect items* . . .

(Italics ours.) The defendant bank agreed to collect items only for William Bellm, with whom it had a contractual relationship, and for West Coast Orient, for whom it agreed to credit Bellm's account. The Bank of California did not agree to collect any item for Swiss Baco. Nor did Swiss Baco have an account with that bank. Because Swiss Baco was neither customer, payee, nor endorser, the defendant Bank of California owed it no duty.

Even if we were to recognize that the Bank of California did owe a duty to plaintiff to exercise due care in the deposit and disbursement of the timber contract proceeds, there is no evidence that any breach of that duty occurred.

---

faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable."

Under RCW 62A.4–203,[3] the Bank of California was entitled to rely on the instructions given to it by its immediate advising bank. We have before us only the interbranch credit wire which directed the credit to a specific account. According to uncontroverted evidence, normal banking procedures dictate that, in carrying out those instructions, the specific number of the account contained on the credit instructions determines the account to which the funds must be credited. Plaintiff has failed to present any evidence that United States National directed the defendant bank to credit any account other than the account numbered 04 01972–5.

■ The disbursement of the funds was likewise performed in accordance with the standard of due care. If the contract proceeds were properly credited to Bellm's account, which we have determined they were, then Bellm, alone, had complete control over their disposition. *See Allied Sheet Metal Fabricators, Inc. v. Peoples Nat'l Bank,* 10 Wn. App. 530, 518 P.2d 734 (1974). The added fact that Haliewicz participated in directing the disposition of those proceeds is immaterial as far as the Bank of California is concerned so long as it followed its *customer's* orders. The trial court properly granted summary judgment for the defendant Bank of California.

Turning now to Swiss Baco's claim against defendant Washington Mutual Savings Bank, recall that on December 28, 1973, Haliewicz negotiated cashier's check No. 39339 which had been made payable to the order of "Emil Haliewicz, Swiss Baco Skyline Logging, Inc." Haliewicz endorsed this check by printing "Swiss Baco Skyline Logg. Inc." on the back of the instrument and signing his name below that. He instructed the teller to deposit $40,000 in his personal savings account and return the remainder to

---

[3]RCW 62A.4–203 provides:

"Subject to the provisions of Article 3 concerning conversion of instruments (RCW 62A.3–419) and the provisions of both Article 3 and this Article concerning restrictive indorsements only a collecting bank's transferor can give instructions

him in the form of $2,000 cash and a draft payable to Seattle–First National Bank in the sum of $6,000.

Swiss Baco insists that Washington Mutual was negligent as a matter of law in negotiating this check because it had "notice of a claim against the instrument." According to RCW 62A.3–304(2):

> The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty.

Washington Mutual contends, initially, that the cited statutory section bears only upon the status of a party as a holder in due course of an instrument. We cannot accept that proposition. We have previously recognized that the owner of a check has a cause of action against a depository bank for negligently taking an instrument against which it has notice of a claim. *Von Gohren v. Pacific Nat'l Bank,* 8 Wn. App. 245, 505 P.2d 467 (1973). However, unlike the plaintiff in *Von Gohren,* who was the designated payee of the wrongfully negotiated check, we conclude that Swiss Baco was not a named payee of, and thus did not have any protectable interest in, check No. 39339.

Plaintiff contends that the designation "Emil Haliewicz, Swiss Baco Skyline Logging, Inc." on check No. 39339 constitutes joint payee language under RCW 62A.3–116.[4] We do not agree. Neither the code nor the comments thereto offer assistance in interpreting the subject phrase. The comma which separates the two parties introduces a patent ambiguity onto the face of the instrument. Is the comma a substitute for the word "and" or for the word

which affect the bank or constitute notice to it and a collecting bank is not liable to prior parties for any action taken pursuant to such instructions or in accordance with any agreement with its transferor."

[4]RCW 62A.3–116:
"An instrument payable to the order of two or more persons
"(a) if in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it;
"(b) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them."

"or"? Does the comma simply associate Haliewicz as working for Swiss Baco in the sense of an identifying phrase? We conclude that although the language is not typical of instruments payable with words of description under RCW 62A.3–117,[5] Haliewicz and Bellm—the parties responsible for this language—intended the instrument to be payable to Haliewicz *unconditionally*. We deem their intent controlling as to the proper interpretation to be placed upon this ambiguous payee designation. There is no other parol evidence indicating a contrary intent. *Cf. Rembrandt Electronics, Inc. v. Chase Manhattan Bank,* 51 Misc. 2d 745, 273 N.Y.S.2d 868 (1966).

Thus, Swiss Baco's claim against Washington Mutual for cashing check No. 39339 fails for the same reason that its action fails against the Bank of California, *i.e.,* plaintiff was not a member of the class to whom the bank owed a duty.

Finally, plaintiff contends that Washington Mutual failed to exercise ordinary care by cashing the United States Forest Service check made payable to "Swiss Baco Skyline, 2416 Holly Lane, Olympia, Wa 98501" over Haliewicz's unauthorized endorsement.

■ We hold, as a matter of law, that Washington Mutual did not act in accordance with reasonable commercial standards in accepting that check. Defendant bank is deemed to have had notice of a claim against the instrument by virtue of its knowledge that Haliewicz, purporting to act in the name of "Swiss Baco Skyline," negotiated the check in exchange for a personal certificate of deposit. *See* RCW 62A.3–304(2); *Von Gohren v. Pacific Nat'l Bank, supra.*

---

[5]RCW 62A.3–117:

"An instrument made payable to a named person with the addition of words describing him

"(a) as agent or officer of a specified person is payable to his principal but the agent or officer may act as if he were the holder;

"(b) as any other fiduciary for a specified person or purpose is payable to the payee and may be negotiated, discharged or enforced by him;

"(c) in any other manner is payable to the payee unconditionally and the additional words are without effect on subsequent parties."

There was no evidence to indicate that the defendant bank in this instance made any inquiry regarding either the reason or the authority for the endorsement of the check in the name of "Swiss Baco Skyline." Washington Mutual's own bank manual, indicative of standard banking procedures, instructs tellers not to "cash checks payable to or endorsed by corporations, companies, firms, etc., unless there is specific authority on file or unless there is an officer's approval," and directs tellers to "cash checks payable only to individuals." Washington Mutual can derive no comfort from the fact that the named payee is not plaintiff's complete corporate name. *See Von Gohren v. Pacific Nat'l Bank, supra.*

In conclusion, Washington Mutual asserts three defenses which require brief discussion. First, the bank contends Swiss Baco negligently contributed to the making of Haliewicz's unauthorized signature.

RCW 62A.3–406 provides:

> Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and *in accordance with the reasonable commercial standards* of the drawee's or payor's business.

(Italics ours.) This section creates a conditional estoppel not otherwise available to a bank. However, before it can take advantage of the estoppel, the bank must first show that it acted in accordance with the reasonable commercial standards of the banking business. Washington Mutual, having failed to do so, cannot avail itself of plaintiff's alleged contributory negligence.

Second, Washington Mutual argues that plaintiff has "ratified" Haliewicz's unauthorized signature by failing to cancel or attempt to cancel the sale of the timber contracts to West Coast Orient. RCW 62A.3–404(1) provides:

Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.

Defendant bank's reliance on this section is misplaced. For a principal to be charged with the unauthorized act of its agent by ratification, it must act with full knowledge of the facts or accept the benefits of the act or intentionally assume the obligation imposed without inquiry. *See National Bank of Commerce v. Thomsen*, 80 Wn.2d 406, 495 P.2d 332 (1972). Plaintiff's ratification of the sale of the timber contracts by claiming an interest in their proceeds does not constitute ratification of Haliewicz's alleged acts of misappropriation of a portion of those proceeds.

Third, Washington Mutual claims that Swiss Baco has no ownership interest in the United States Forest Service check, because the record indicates that Haliewicz and another party, and not the corporate plaintiff herein, were the ultimate source of those funds. The ownership of that check, as between Swiss Baco and Haliewicz, is a fact matter yet to be decided if, as, and when the plaintiff's basic allegations against Haliewicz ever are presented to a trier of fact.

Judgment in favor of the Bank of California is affirmed. Judgment in favor of Washington Mutual Savings Bank is partially reversed insofar as it dismisses plaintiff's claim that Washington Mutual negligently honored the United States Forest Service check; in all other respects it is affirmed. Accordingly, this matter is remanded for further proceedings not inconsistent herewith to determine whether or not Swiss Baco has in fact sustained any damages by reason of Washington Mutual's act of having negligently

honored the United States Forest Service check.

REED, J., and RINGOLD, J. Pro Tem., concur.

Petition for rehearing denied August 25, 1977.