127 P.3d 722 (2006)
131 Wash.App. 167
Robert K. & Debra ZABKA, Appellants,
v.
BANK OF AMERICA CORPORATION, Respondent.
No. 55246-5-I.
Court of Appeals of Washington, Division 1.
November 21, 2005.
Publication Ordered and as Amended January 19, 2006.
Brent Witners, Charleston, IL, Amy Marie Phillips, Rob J. Crichton, Keller Rohrback LLP, Seattle, WA, for Appellants.
William Rasmussen, David Wright Tremaine, Seattle, WA, for Respondent.
BAKER, J.
¶ 1 Robert and Debra Zabka lost $300,000 to either Jae Ho Pak or Paul Franklin or both, not parties to this suit. The theft was accomplished via a series of wire transfers and inter-account transfers involving two related business entities and two Bank of America (BA) checking accounts. The Zabkas sued BA on a variety of negligence, fraud, and misrepresentation theories. BA filed a Civil Rule (CR) 12(b)(6) motion to dismiss, which the trial court granted. The Zabkas appealed. We affirm because (1) the bank owed no duty of care to non-customers, *723 and (2) the bank made no representations to the Zabkas.

I.
¶ 2 In January 2001, Bank of America (BA) opened checking accounts at two different branches for two related business entities: SeaCap Fund, LP (SeaCap) and its general partner, Seattle Capital Group, LLC (Capital). Jae Ho Pak and Paul Franklin were the principles of both entities. On May 2, 2001, Robert and Debra Zabka ordered a $300,000 wire transfer to the Capital checking account to secure their limited partnership interest in SeaCap.[1] Between May 8 and May 10, a series of transfers ensued between SeaCap and Capital, and then out of the Capital account altogether. The Zabkas lost their $300,000.
¶ 3 Although the record is unclear, it appears that Paul Franklin sued Jae Ho Pak, SeaCap, and Capital. The Zabkas did not participate in the suit, and the result is unknown.[2] In April of 2004 the Zabkas had their first chance to review the deposition transcripts of BA employees. They discovered procedural irregularities and errors surrounding the opening of the two accounts and the actual transfers of money that the Zabkas allege were negligent. The Zabkas also discovered that the wife of Jae Ho Pak worked for one of the BA branches involved, and that she lied about her relationship to Pak when questioned by a BA employee who was investigating the transaction. Finally, they discovered that BA had lost the file relating to the SeaCap and Capital accounts that might have shed light on the situation. The Zabkas filed a pro se complaint against BA on May 7, 2004, claiming various forms of negligence, fraud, and negligent misrepresentation.
¶ 4 BA moved for dismissal for failure to state a claim under CR 12(b)(6). They argued that (1) BA owed no duty of care to the Zabkas; (2) BA made no representations to the Zabkas; and (3) the statute of limitations had expired. The Zabkas retained an attorney for the limited purpose of arguing the motion. The trial court ruled in favor of the Zabkas regarding the statute of limitations, and in favor of BA on the fraud and negligent misrepresentation issues.
¶ 5 The court split the issue of duty of care into two sub-issues: (1) the alleged failure to obtain proper documentation and paperwork regarding the opening of the accounts, and (2) the alleged improprieties surrounding the transfers of money into and out of the two accounts. Regarding the opening of the accounts, the court found in favor of BA. After supplemental briefing the trial court found in favor of BA on the issue of the transfers and dismissed the suit in its entirety.
¶ 6 The Zabkas appeal.

II.
¶ 7 Dismissal under CR 12(b)(6) is reviewed de novo.[3] A trial court may dismiss for failure to state a claim only if "`it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'"[4]
¶ 8 A negligence action may only proceed if the plaintiffs have shown that (1) a duty of care was owed to them by the defendant; (2) there was a breach of that duty; (3) that breach was the cause of their harm; and (4) they suffered injury as a result.[5] The only element at issue below was the duty of care.
*724 ¶ 9 There is no Washington authority directly on point, but the Zabkas cite Swiss Baco Skyline Logging, Inc. v. Haliewicz.[6] In Swiss Baco, the plaintiff corporation was defrauded of timber contract sale proceeds by Emil Haliewicz, a former company president.[7] The Bank of California issued, and Washington Mutual honored, a series of checks made payable to "Emil Haliewicz, Swiss Baco Skyline Logging Inc."[8] One of the checks cashed by Haliewicz, however, was a United States Forest Service refund check issued to "Swiss Baco Skyline" and did not bear Haliewicz's name.[9] Neither bank had any relationship with Swiss Baco.[10] Regarding the checks issued in Haliewicz's name, the court interpreted the language to mean that Haliewicz was the sole payee of those checks. Therefore the court held that neither bank owed a duty to Swiss Baco to investigate whether Haliewicz actually had authority to receive or cash checks because Swiss Baco was not a "member of the class to whom the bank owed a duty."[11] However, regarding the check made out to "Swiss Baco Skyline" only, the court held that Swiss Baco was the payee and under RCW 62A.3-406,[12] Washington Mutual had negligently honored the check bearing only Haliewicz's endorsement.[13] The statute created a duty of care to Swiss Baco that the bank failed to satisfy with respect to the check made out only to Swiss Baco.
¶ 10 In this case, no statute creates a duty of care from BA to the Zabkas. If the bank had mishandled the Zabkas' wire transfer, then the Zabkas might have a claim under RCW 62A.4A-303. But that is not the case. The wire transfer went into the intended account. As in Swiss Baco, the Zabkas are not a member of any class to whom the bank owed a duty.
¶ 11 Many other jurisdictions have held that third party non-customers are not owed a duty of care by a bank, absent a direct relationship or statutory duty.[14] The most closely analogous case to this one is Eisenberg v. Wachovia Bank,[15] in which a wrongdoer set up a personal account in the name of "Douglas Walter Reid dba Bear Stearns."[16] Bear Stearns was a large financial securities firm with which Reid had absolutely no connection. After convincing the plaintiff to wire one million dollars into this account, purportedly so Reid could invest it, Reid made off with the money.[17] Eisenberg argued that the bank should have checked into Reid's authority to open the account under the name Bear Stearns. The Fourth Circuit court held the bank did not owe Eisenberg a duty of care under the facts of the case because he was not a customer, and the bank should not be held liable because it "would expose banks to unlimited liability for unforeseeable frauds."[18]
¶ 12 One court has held a bank liable to a non-customer, but in unique circumstances. In Patrick v. Union State Bank,[19] an imposter *725 used the stolen identity of Patrick to open a checking account at a bank where she did no business. After the imposter bounced numerous checks, Patrick was arrested and charged.[20] Patrick sued Union State Bank; the bank argued that it had no duty to her because she was not a customer.[21] The Supreme Court of Alabama held that given the circumstances, the injury was foreseeable, and the bank was in the best position to detect the scheme and prevent the harm to the plaintiff.[22] However, Patrick had a unique set of facts and at least one subsequent Alabama case, far more similar to this case than Patrick was, limited its application.[23]Patrick is not applicable to this case. BA never had any business relationship with the Zabkas; they were merely depositors into a checking account. Furthermore, the bank was not in the best position to protect the Zabkasthe Zabkas were. Had they investigated SeaCap and Capital, or demanded paperwork and evidence of legitimacy of those entities themselves, their injury could have been avoided.
¶ 13 While the Zabkas' limited partnership interest is a security,[24] statutes and case law governing the securities markets and preventing securities fraud do not support the Zabkas' claim that their security makes them customers of the bank. The securities statutes endow securities with negotiability, as opposed to regulating the conduct of banks maintaining depository accounts.[25] Moreover, the Capital account was not a securities account. It was an ordinary checking account. The statutes cited by the Zabkas do not establish that the bank had a duty under these facts.
¶ 14 There is evidence that BA failed to follow standard procedures and monitor transactions according to its own internal standards. BA's failures may have facilitated the theft of the Zabkas' money, but BA did not have a duty to prevent their loss. The trial court correctly dismissed the negligence claims on a CR 12(b)(6) motion.
¶ 15 The Zabkas did not address the fraud or negligent misrepresentation claims in their opening brief. BA contends that the Zabkas have abandoned the issue, and that in any case, BA made no representations to the Zabkas. The Zabkas argue for the first time in their reply brief that the issue of representations is irrelevant, because BA knowingly assisted a fiduciary in misappropriating their money.
¶ 16 An assignment of error not addressed in the appellant's brief is deemed abandoned.[26] New arguments generally will not be heard on appeal.[27] The Zabkas did not address the fraud and negligent misrepresentation claims in their brief. They also allege for the first time in their reply brief that BA "knowingly" assisted Paul Franklin in the theft. This claim was never made to the trial court. It was also not made in their opening brief and will not be addressed.
¶ 17 In addition, the Zabkas have not alleged that BA made any representations to them or supplied them with any information.[28] Representation of an existing fact is one of the nine elements essential to maintaining a valid claim of fraud.[29] For a case of negligent misrepresentation, the plaintiff must show that the defendant "`supplie[d] false information for the guidance of *726 others in their business transactions.'"[30] There is nothing in the record to show that BA communicated with the Zabkas prior to or during the transactions in question. The trial court properly dismissed these claims.
¶ 18 Given our disposition of these issues, it is unnecessary to address Zabkas' statute of limitations argument.
¶ 19 The trial court did not err when it dismissed the negligence claims on a CR 12(b)(6) motion. The trial court properly dismissed the Zabkas' claims of fraud and negligent misrepresentation, and they were not properly raised on appeal.
¶ 20 AFFIRMED.
WE CONCUR: APPELWICK, A.C.J., and GROSSE, J.
NOTES
[1] There is no indication in the record as to why the Zabkas' payment order was to the Capital account and not directly to the account for SeaCap. However, the Zabkas declare that they believed that the money would then be forwarded to the SeaCap account.
[2] The only indication of the Franklin v. Pak lawsuit in this record is the caption on the deposition transcripts attached to the complaint.
[3] Gorman v. Garlock, Inc., 121 Wash.App. 530, 534, 89 P.3d 302 (2004), aff'd, 155 Wash.2d 198, 118 P.3d 311 (2005).
[4] Haberman v. Washington Pub. Power Supply Sys., 109 Wash.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987) (quoting Bowman v. John Doe, 104 Wash.2d 181, 183, 704 P.2d 140 (1985)).
[5] Keller v. City of Spokane, 146 Wash.2d 237, 242, 44 P.3d 845, 848 (2002).
[6] 18 Wash.App. 21, 567 P.2d 1141 (1977).
[7] Swiss Baco, 18 Wash.App. at 22, 567 P.2d 1141.
[8] Swiss Baco, 18 Wash.App. at 25, 567 P.2d 1141.
[9] Swiss Baco, 18 Wash.App. at 26, 567 P.2d 1141.
[10] Swiss Baco, 18 Wash.App. at 27, 30, 567 P.2d 1141.
[11] Swiss Baco, 18 Wash.App. at 30, 567 P.2d 1141.
[12] RCW 62A.3-406(b) provides that failure to exercise ordinary care in paying or taking an altered or forged instrument can create liability in negligence.
[13] Swiss Baco, 18 Wash.App. at 30, 567 P.2d 1141.
[14] See Weil v. First Nat'l Bank of Castle Rock, 983 P.2d 812 (Colo.Ct.App.1999); Volpe v. Fleet Nat'l Bank, 710 A.2d 661 (R.I.1998); Miller-Rogaska, Inc. v. Bank One, 931 S.W.2d 655 (Tex.App.1996); Software Design & Application, Ltd. v. Hoefer & Arnett, Inc., 49 Cal.App.4th 472, 56 Cal.Rptr.2d 756 (1996); Portage Aluminum Co. v. Kentwood Nat'l Bank, 106 Mich.App. 290, 307 N.W.2d 761 (1981).
[15] 301 F.3d 220 (4th Cir.2002).
[16] Eisenberg, 301 F.3d at 222.
[17] Eisenberg, 301 F.3d. at 222.
[18] Eisenberg, 301 F.3d at 226-27.
[19] 681 So.2d 1364 (Ala.1996).
[20] Patrick, 681 So.2d at 1366.
[21] Patrick, 681 So.2d at 1369.
[22] Patrick, 681 So.2d at 1369.
[23] Smith v. AmSouth Bank, Inc., 892 So.2d 905, 908 (Ala.2004).
[24] State v. Argo, 81 Wash.App. 552, 566, 915 P.2d 1103 (1996).
[25] 21 A.L.R.3d 964 § 2a.
[26] In re Discipline of Brown, 94 Wash.App. 7, 13, 972 P.2d 101 (1998).
[27] Wingert v. Yellow Freight Sys., Inc., 146 Wash.2d 841, 853, 50 P.3d 256 (2002).
[28] The Zabkas argued to the trial court that BA's very existence as a national bank was a "representation" to the world that they conduct business properly and follow their own procedures. This argument is not plausible on its face, and in any event was also abandoned on appeal.
[29] Stiley v. Block, 130 Wash.2d 486, 505, 925 P.2d 194 (1996).
[30] ESCA Corp. v. KPMG Peat Marwick, 135 Wash.2d 820, 826, 959 P.2d 651 (1998) (quoting Restatement (Second) of Torts § 552(1) (1977)).