

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOHN NORTON and KRISTINE NORTON, individually; NORTHLAND CAPITAL, LLC, | ) ) ) ) | No. 74058-0-I |
| Appellants, | ) ) | DIVISION ONE |
| and | ) ) ) | |
| P.R.E. ACQUISITIONS, LLC, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| U.S. BANK NATIONAL ASSOCIATION, d/b/a U.S. BANK, | ) ) ) | UNPUBLISHED OPINION |
| Respondent, | ) ) | FILED: February 21, 2017 |
| JOSE NINO DE GUZMAN and NDG INVESTMENT GROUP, LLC, | ) ) ) | |
| Defendants. | ) ) ) | |

BECKER, J. — This is an appeal from a summary judgment dismissal of a claim that a bank aided and abetted a customer who operated a Ponzi scheme. We are asked to reverse our prior determination that a statutory privilege prohibits discovery of information about the bank's internal investigations and monitoring. Finding no reason to abandon that decision and insufficient evidence to defeat summary judgment, we affirm.

Jose Nino de Guzman was employed by respondent U.S. Bank National Association until 2006, when he left to form NDG Investment Group LLC. He told potential investors that their money would fund real estate development projects in Peru. The Nortons invested $11 million in 2008. They later discovered that Nino de Guzman was operating a Ponzi scheme and their money was gone.

The Nortons sued Nino de Guzman and NDG. Both defendants failed to appear and default judgments were entered. The Nortons also included U.S. Bank as a defendant. They alleged that after Nino de Guzman stopped working for the bank, he enlisted bank employees to help him recruit investors. He deposited money from investors into his accounts at U.S. Bank. According to the Nortons, under these circumstances, U.S. Bank knew or should have known about the fraud. Their claims against the bank included aiding and assisting fraud and negligent supervision.

During discovery, the Nortons sought information regarding the bank's systems and investigations to detect fraud and money laundering. U.S. Bank objected, arguing the information was privileged under the Bank Secrecy Act, 31 U.S.C. § 5318(g). The act requires banks to report known or suspected violations of federal law to the federal government. 31 U.S.C. § 5318(g)(1), (4); 12 C.F.R. § 21.11(a), (b), (c). Banks may not disclose the existence of a report, or "any information that would reveal the existence" of a report. 12 C.F.R. § 21.11(k)(1)(i).

The bank sought an order prohibiting discovery of "the existence or non-existence of any suspicious activity monitoring, investigation, or reporting U.S.

2

Bank may have conducted relating to the accounts at issue in this case, and to the methods, policies and procedures U.S. Bank employs generally to monitor for suspicious activity under the Bank Secrecy Act." The court denied this motion. U.S. Bank was ordered to comply with the contested discovery requests.

On discretionary review, this court reversed the order compelling discovery. Norton v. U.S. Bank Nat'l Ass'n, 179 Wn. App. 450, 324 P.3d 693, review denied, 180 Wn.2d 1023 (2014). We observed that internal memoranda or forms regarding suspicious activity can reveal whether a bank planned to or had already filed a report with the federal government. Norton, 179 Wn. App. at 462. Therefore, those documents warrant protection under the Bank Secrecy Act. Norton, 179 Wn. App. at 462. We held that U.S. Bank cannot be ordered to "describe or disclose its internal investigations, either generally or those specifically related to this case." Norton, 179 Wn. App. at 462.

On remand, the trial court barred discovery of "information and documents created or prepared as part of any suspicious activity monitoring, investigating or reporting by U.S. Bank," as well as "the methods, policies and procedures U.S. Bank employs generally to monitor and detect for suspicious activity."

On U.S. Bank's motion, the court granted summary judgment and dismissed the case. The Nortons appeal.

## DISCOVERY PRIVILEGE

The Nortons ask us to change our previous decision and allow them to obtain discovery of internal bank documents that we held were within the scope of the Bank Secrecy Act discovery privilege.

An appellate ruling must be followed in all subsequent stages of the same litigation. State v. Schwab, 163 Wn.2d 664, 672, 185 P.3d 1151 (2008), citing Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005); Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 113, 829 P.2d 746 (1992), cert. denied, 506 U.S. 1079 (1993). There is an exception to this doctrine: an appellate court considering a case for a second time following remand may, "where justice would best be served," base its decision on the court's opinion of the law at the time of later review. RAP 2.5(c)(2). A prior ruling may be avoided when it is "clearly erroneous, and the erroneous decision would work a manifest injustice to one party," or "there has been an intervening change in controlling precedent between trial and appeal." Roberson, 156 Wn.2d at 42, citing First Small Bus. Inv. Co. of Cal. v. Intercapital Corp. of Or., 108 Wn.2d 324, 333, 738 P.2d 263 (1987); RAP 2.5(c)(2).

The Bank Secrecy Act requires banks to establish internal procedures to detect violations of federal law and to report known or suspected violations to an agency or office designated by the Secretary of the Treasury. 31 U.S.C. § 5318(g)(1), (4), (h); 12 C.F.R. § 21.11(a), (b), (c). These reports, called "Suspicious Activity Reports," or "SARs," are confidential. "Banks are prohibited from responding to a discovery request for a Suspicious Activity Report or any

4

information that would reveal the existence of a Suspicious Activity Report."

Norton, 179 Wn. App. at 455; 12 C.F.R. § 21.11(k)(1)(i).

Our earlier decision recognized that the discovery privilege furthers several policy considerations:

> Release of an SAR could compromise an ongoing law enforcement investigation, tip off a criminal wishing to evade detection, or reveal the methods by which banks are able to detect suspicious activity. Furthermore, banks may be reluctant to prepare an SAR if it believes that its cooperation may cause its customers to retaliate. Moreover, the disclosure of an SAR may harm the privacy interests of innocent people whose names may be contained therein.

Norton, 179 Wn. App. at 456-57 (internal quotations omitted), quoting Cotton v. PrivateBank & Trust Co., 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002).

Federal trial courts have recognized a distinction between factual documents giving rise to suspicious activity, which are not protected because they are "records made in the ordinary course of business," and internal reports regarding suspicious activity, which warrant protection. Norton, 179 Wn. App. at 457-58 (internal quotations omitted), quoting Cotton, 235 F. Supp. 2d at 815; see also Whitney Nat'l Bank v. Karam, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

With these cases and relevant policy considerations in mind, we concluded that the privilege extends to internal reports regarding suspicious activity. Norton, 179 Wn. App. at 462. Because internal systems to detect and investigate money laundering will be "intertwined with the bank's obligation to report suspicious activity to the government," discovery into those matters "will produce documents suggesting that a Suspicious Activity Report has been or

might be under consideration or has already been filed." Norton, 179 Wn. App. at 462.

The Nortons contend that our decision interpreted the privilege too broadly. In their view, a proper interpretation of the privilege would permit discovery of "the Bank's policies, procedures and any investigatory or risk management documents that exist independent of the Bank's reporting obligations under federal law," including "employee supervisory documents." Brief of Appellant at 25-26, 33.

The Nortons assert that recent cases "properly recognize that all documents generated or received in the ordinary course of business, including those that may have led up to the filing of a SAR, are discoverable, so long as they do not reference a SAR itself." Brief of Appellant at 31-32. In support of this proposition, they cite In re Whitley, No. 10-10426C-7G, 2011 WL 6202895 (Bankr. M.D.N.C. Dec. 13, 2011) (court order). Whitley concluded that internal bank reports or memoranda regarding investigations into suspicious activity are not protected. Whitley, 2011 WL 6202895 at *4. Other decisions also support a less expansive reading of the privilege. For instance, in Wultz v. Bank of China Ltd., 56 F. Supp. 3d 598, 600, 602-03 (S.D.N.Y. 2014), the court declined to extend the privilege to documents generated in result of a bank's policies and procedures for filing suspicious activity reports.

In addition to these trial court decisions, the Nortons cite one relevant appellate decision, In re JPMorgan Chase Bank, 799 F.3d 36 (1st Cir. 2015). There, the court declined the bank's "invitation to view the privilege as extending

to any document that might speak to the investigative methods of financial institutions." JPMorgan, 799 F.3d at 44 (internal quotations omitted). It was not necessary, however, for the court to rule on the reach of the Bank Secrecy Act and related regulations; the court expressly stated that it was not doing so. JPMorgan, 799 F.3d at 43.

These cases provide interpretations of the discovery privilege that differ in certain regards from the position adopted by this court. But they do not require that we change our earlier ruling. To the extent that cases such as Whitley, Wultz, and JPMorgan offer a less expansive reading of the privilege, they are less likely to advance the policy goals supporting the privilege and are inconsistent with the cases that we relied on in rendering Norton.

Appellants contend that the Office of the Comptroller of Currency—the agency that drafted the regulations at issue—has rejected the interpretation adopted by this court. They cite a rule stating, "with respect to the SAR confidentiality provision only, national banks may disclose underlying facts, transactions, and documents for any purpose, provided that no person involved in the transaction is notified that the transaction has been reported and *none of the underlying information reveals the existence of a SAR.*" Confidentiality of Suspicious Activity Reports, 75 Fed. Reg. 75,576, 75,581 (Dec. 3, 2010) (emphasis added) (footnote omitted). This amendment, enacted before we decided Norton, does not change our analysis. The amendment reiterates that the discovery privilege covers suspicious activity reports as well as information that would reveal the existence of a report. 12 C.F.R. § 21.11(k)(1)(i).

7

In sum, the Nortons have failed to demonstrate the prior decision is clearly erroneous and would work an injustice, or that there has been an intervening change in controlling precedent. Roberson, 156 Wn.2d at 42. We adhere to our original decision.

## AIDING AND ABETTING FRAUD

The Nortons assert that even without further discovery, there is sufficient evidence to warrant a jury's consideration of U.S. Bank's liability for aiding and abetting fraud.

We review summary judgment orders de novo, engaging in the same inquiry as the trial court. August v. U.S. Bancorp, 146 Wn. App. 328, 339, 190 P.3d 86 (2008), review denied, 165 Wn.2d 1034 (2009). All facts and any reasonable inferences therefrom are viewed in the light most favorable to the nonmoving party. August, 146 Wn. App. at 339. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. August, 146 Wn. App. at 339.

A person who knowingly assists another to commit a tort, or knowingly assists another to violate a fiduciary or trust obligation, is liable for proximately caused losses. LaHue v. Keystone Inv. Co., 6 Wn. App. 765, 783, 496 P.2d 343, review denied, 81 Wn.2d 1003 (1972); see also RESTATEMENT (SECOND) OF TORTS § 876 (1977). Actual knowledge is required. El Camino Res., LTD v. Huntington Nat'l Bank, 722 F. Supp. 2d 875 (W.D. Mich. 2010), aff'd, 712 F.3d 917 (6th Cir. 2013). The assistance provided must be substantial. Martin v.

8

Abbott Labs., 102 Wn.2d 581, 596, 689 P.2d 368 (1984), citing RESTATEMENT (SECOND) OF TORTS § 876(a)-(c) (1977).

The trial court determined there was insufficient evidence that U.S. Bank had actual knowledge of the fraud or provided substantial assistance.

Appellants do not identify direct evidence of actual knowledge. They contend that a jury could infer the bank's actual knowledge of Nino de Guzman's fraudulent scheme based on "'indifference to the truth' in the face of suspicious circumstances." Brief of Appellant at 18, quoting United States v. Westerfield, 714 F.3d 480, 485 (7th Cir. 2013). In Westerfield, the defendant, a lawyer and title agent, was convicted of wire fraud based on her participation in a mortgage fraud scheme. Westerfield, 714 F.3d at 482. On appeal, Westerfield argued there was insufficient evidence that she acted with intent to defraud, an element of wire fraud. Westerfield, 714 F.3d at 484-85. The appellate court disagreed, finding that sufficient circumstantial evidence showed her intent:

> Overall, the jury learned that Westerfield had helped two individuals purchase five homes in a short period of time with financing from different lenders at high loan-to-value ratios. She rushed the buyers and sellers—who were clueless and obviously fake—through the closing process and then gave the mortgage proceeds to a third party. Based on this evidence, a reasonable jury could conclude that if Westerfield had been unaware that she was facilitating an illegal scheme, she only lacked such knowledge because she was deliberately ignorant.

Westerfield, 714 F.3d at 486.

Here, there is evidence that two U.S. Bank employees accepted compensation from Nino de Guzman, himself a former employee of the bank, in exchange for helping him recruit investors. Both employees personally invested

in NDG. One of the employees assisted with the opening of numerous NDG accounts at U.S. Bank that Nino de Guzman then used for large international wire transfers. Based on their dealings with Nino de Guzman, these employees likely violated bank policies regarding conflicts of interest and outside employment.

The employees' conduct may be suspicious in a general sense, but it does not demonstrate that their professed ignorance of the Ponzi scheme was deliberate. At most, the evidence demonstrates that the employees had actual knowledge of Nino de Guzman's investment venture and were willing to assist him with it despite the potential conflict of interest. Evidence that large amounts of money moved in and out of the NDG accounts is insufficient, without more, to attribute knowledge to the bank.

There is evidence that a bank branch manager lowered the risk score on accounts associated with Nino de Guzman, making it less likely that the accounts would receive scrutiny. The manager testified that he did not know about the fraud. Appellants contend that a jury could reject this testimony and infer that the opposite is true. The possibility that a witness may have perjured himself is speculative. Speculation does not create an issue of material fact. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 12, 721 P.2d 1 (1986). In the absence of evidence that the manager altered forms for the purpose of assisting Nino de Guzman and with knowledge of his scheme, the manager's conduct does not create liability for the bank.

In sum, the record does not support an inference that the bank had actual knowledge of fraud. Unlike in <u>Westerfield</u>, the evidence does not support a theory of deliberate indifference to the truth. The trial court properly dismissed the aiding and abetting claim for insufficient evidence.

## NEGLIGENT SUPERVISION

The Nortons also appeal the dismissal of their claim that the bank negligently supervised its employees.

A negligence action requires proof that the defendant owed the plaintiff a duty of care. <u>Zabka v. Bank of Am. Corp.</u>, 131 Wn. App. 167, 170, 127 P.3d 722 (2005), <u>review denied</u>, 158 Wn.2d 1012 (2006). The trial court concluded that the negligence claim failed because the bank owed no duty of care to the Nortons, given that they were not customers of U.S. Bank and did not have any special relationship with the bank.

The court relied on <u>Zabka</u> in resolving this issue. <u>Zabka</u> involved plaintiffs who attempted to invest in a company by wiring money into the company's bank account. <u>Zabka</u>, 131 Wn. App. at 168-69. The money was stolen by the company principals, and the plaintiffs sued the bank for negligence. <u>Zabka</u>, 131 Wn. App. at 168-69. The court concluded the plaintiffs could not bring a negligence claim against the bank because the bank owed them no duty of care; the bank "never had any business relationship with the Zabkas; they were merely depositors into a checking account." <u>Zabka</u>, 131 Wn. App. at 173.

The facts of this case are similar to those in <u>Zabka</u>. The Nortons were not customers of U.S. Bank. Their only connection to the bank appears to be that

11

they invested with NDG, and NDG and Nino de Guzman maintained accounts at U.S. Bank. Even if the Nortons could prove that the bank failed to follow its own standards and procedures in monitoring NDG's accounts, that evidence would be inadequate to create a duty owed by the bank to the Nortons. Zabka, 131 Wn. App. at 173.

Appellants contend that Zabka does not apply, citing the principle that "the duty of supervision extends to reasonably foreseeable victims of the defendant's employees." Brief of Appellant at 21, citing McKown v. Simon Prop. Group, Inc. 182 Wn.2d 752, 764, 344 P.3d 661 (2015); see also Appellant's Statement of Additional Authorities, citing N.L. v. Bethel Sch. Dist., 186 Wn.2d 422, 378 P.3d 162 (2016). But cases such as McKown and Bethel do not limit the applicability of Zabka to this case. Because appellants cannot demonstrate that U.S. Bank owed them a duty of care under the circumstances here, summary judgment on their negligence claim was proper.

The Nortons contend that U.S. Bank proximately caused their damages, primarily because the bank gave the fraudulent scheme an "imprimatur of legitimacy." Brief of Appellant at 23. They allege that they might not have invested with Nino de Guzman if he had not had a relationship with a reputable bank. In light of our conclusion that appellants cannot satisfy the duty element, we need not address the issue of causation.

Affirmed.

_Becker, J._

WE CONCUR:

_Spearman, J._          _Dwyer, J._