**Eric EISENBERG, Plaintiff–Appellant,**

v.

**WACHOVIA BANK, N.A.,
Defendant–Appellee.**

No. 02–1166.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 2002.

Decided Aug. 26, 2002.

**ARGUED:** Richard J.J. Scarola, Scarola, Reavis & Parent, New York, New York, for Appellant. John Benton Morris, Kilpatrick Stockton, L.L.P., Winston–Salem, North Carolina, for Appellee. **ON BRIEF:** Daniel R. Taylor, Jr., Kristin M. Major, Kilpatrick Stockton, L.L.P., Winston–Salem, North Carolina, for Appellee.

Before MICHAEL, Circuit Judge, BEEZER, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation, and LEGG, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by published opinion. Senior Judge BEEZER wrote the opinion, in which Judge MICHAEL and Judge LEGG joined.

## OPINION

BEEZER, Senior Circuit Judge.

Eric Eisenberg ("Eisenberg") appeals the district court's dismissal of his complaint alleging two claims of negligence against Wachovia Bank, N.A. ("Wachovia"). We affirm.

### I

The district court dismissed Eisenberg's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). We state the relevant facts as alleged by the complaint. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir.1999) ("In its review of Rule 12(b)(6) dismissals, this Court must accept as true all of the Appellant's allegations and must construe factual allegations in the light most favorable to the plaintiff.").

Eisenberg was the victim of a fraudulent investment scheme perpetrated by Douglas Walter Reid ("Reid"). Reid falsely represented to Eisenberg that he was a senior vice president of Bear Stearns Companies, a large financial securities firm, and convinced Eisenberg to make a putative investment. At Reid's direction, Eisenberg transferred $1,000,000 via electronic wire to a Wachovia branch bank in North Carolina for deposit in an account bearing the name "Douglas Walter Reid dba Bear Stearns," "For Further Credit to BEAR STEARNS." The electronic transfer was made through the "Fedwire" wire service operated by the Federal Reserve Bank. Wachovia accepted the transfer and deposited the funds to the credit of the specified account, which had been opened by and was under the control of Reid. Reid withdrew almost all of Eisenberg's funds and converted them to his own use.

Wachovia's customer agreements do not restrict the name under which a new customer may open a bank account. The Wachovia employee who opened Reid's account did not verify that Reid was authorized to operate under the name Bear Stearns. Reid possessed no such authority and was not in any way affiliated with Bear Stearns.

Eisenberg filed a complaint against Wachovia in federal court on the basis of diversity jurisdiction, *see* 28 U.S.C. § 1332, asserting two claims of negligence. The first claim alleged that Wachovia negligently allowed Reid to establish and operate a fraudulent bank account and negligently failed to train its employees to detect fraud. The second claim alleged that Wachovia was vicariously liable for its employee's negligence in allowing Reid to open the bank account without proper verification. Both claims include the allegation that Wachovia breached a duty of care owed to people like Eisenberg, who transact with Wachovia customers, to detect and prevent the fraudulent use of its bank accounts.

Wachovia moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Wachovia argued that both negligence claims are preempted by Federal Reserve Board Regulation J ("Regulation J"), Subpart B, 12 C.F.R. §§ 210.25–210.32 (2002). Wachovia also argued, in the alternative, that the claims fail as a matter of law because Wachovia does not owe Eisenberg a duty of care. Agreeing that the claims are preempted, the district court granted Wachovia's motion and dismissed the complaint with prejudice. The court did not address Wachovia's alternative argument for dismissal based on the absence of a duty of care.

■ We review de novo the district court's dismissal of the complaint and can affirm on any basis fairly supported by the record. *Korb v. Lehman,* 919 F.2d 243, 246 (4th Cir.1990). We hold that Regula-

tion J does not preempt Eisenberg's negligence claims but the claims still fail because Wachovia does not owe Eisenberg a duty of care under the facts of this case.

## II

■ We discussed the preemptive effect of Regulation J in *Donmar Enterprises, Inc. v. Southern National Bank of North Carolina,* 64 F.3d 944 (4th Cir.1995). Subpart B of Regulation J incorporates Article 4A of the Uniform Commercial Code to "provide [ ] rules to govern funds transfers through Fedwire." 12 C.F.R. § 210.25(a) (2002); *see id.* at § 210.25(a)-(b). The rules adopted from Article 4A serve as the exclusive means for determining the rights, duties and liabilities of all parties involved in a Fedwire funds transfer. Comm. on Sec. 210.25(b), 12 C.F.R. Part 210, Subpt. B., App. A (2002). Affected parties include senders, intermediary banks, receiving banks and beneficiaries. *Id.* The Federal Reserve Board intended Subpart B to create a "uniform and comprehensive national regulation of Fedwire transfers." *Donmar,* 64 F.3d at 949.

■ By its own terms, Regulation J "supersedes or pre-empts inconsistent provisions of state law." Comm. on Sec. 210.25, 12 C.F.R. Part 210, Subpt. B, App. A (2002). We held in *Donmar* that Regulation J preempts any state law cause of action premised on conduct falling within the scope of Subpart B, whether the state law conflicts with or is duplicative of Subpart B. 64 F.3d at 949–50. Determining if a state law claim is preempted by Regulation J turns on whether the challenged conduct in the state claim would be covered under Subpart B as well.

■ Eisenberg's negligence claims focus on several aspects of Wachovia's conduct in establishing Reid's account and crediting Eisenberg's funds transfer to that account. One instance of alleged negligence involves Wachovia "accepting and crediting the Wire Transfer to Mr. Reid's account when the wire instructions designated 'Bear Stearns' as the intended recipient." Eisenberg addressed the Fedwire transfer to "Wachovia Bank," "Beneficiary Account 1861296138," "For Further Credit to BEAR STEARNS." Subpart B applies here. When a transfer order identifies the beneficiary by an account number, the receiving bank may rely on the account number in crediting the account even though the transfer order identifies a person different from the holder of the account. *See* 12 C.F.R. § 210.27 (2002). Wachovia properly processed Eisenberg's funds transfer order under the standards of Subpart B.

Wachovia is not liable under Subpart B for the manner in which it received and credited Eisenberg's Fedwire funds transfer. Any state law claim that is premised on this same conduct would be either duplicative of or contradictory to Regulation J and is thus preempted. Eisenberg's negligence claims are preempted insofar as they challenge Wachovia's Fedwire transfer processing.

Eisenberg contends, however, that his negligence claims primarily challenge not the wire transfer processing but rather Wachovia's conduct in allowing Reid to open and operate the bank account under the name "dba Bear Stearns." The Fedwire transfer, according to Eisenberg, is only incidental to his negligence claims. Eisenberg thus urges that his negligence claims are not preempted by Regulation J. We agree.

Eisenberg's allegations of negligence are not limited to Wachovia's conduct in processing the Fedwire transfer order. Eisenberg also alleged that Wachovia is negligent by reason of allowing Reid to open the "dba Bear Stearns" bank account, fail-

ing to discover Reid's improper use of the account and failing to train its employees to recognize and prevent fraud. Subpart B has no application to Wachovia's conduct in these instances. Subpart B governs only Fedwire funds transfers, defined as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." Comm. to Secs. 4A–102 & 4A–104, 12 C.F.R. Part 210, Subpt. B, App. B (2002). Subpart B does not address the duties, obligations and liabilities applicable to bank functions having nothing to do with a Fedwire transfer.

State law claims premised on conduct not covered by Subpart B cannot create a conflict with or duplicate the rules established in Subpart B.[1] Permitting Eisenberg's claims to go forward would not create an obstacle to the fulfillment of Subpart B's purpose of establishing a uniform body of federal law to govern Fedwire transfers. *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (holding state law claim preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress") (internal quotations and citation omitted). A finding that Wachovia is negligent in opening Reid's account would not conflict with a

finding that, under Subpart B of Regulation J, Wachovia properly credited the Fedwire transfer to the account. The two findings would touch on distinct and independent conduct by Wachovia.

We hold that Eisenberg's negligence claims, insofar as they challenge the opening and management of Reid's account, are not preempted by Regulation J.

## III

Wachovia reasserts on appeal an alternative argument for dismissal, not decided by the district court, that Eisenberg fails to allege one essential element in a negligence claim. Wachovia contends that it does not owe Eisenberg a duty of care and therefore cannot be held liable in negligence for Eisenberg's injury.

■■■■ Under North Carolina law, "[n]egligence is the failure to exercise proper care in the performance of a legal duty owed by a defendant to a plaintiff under the circumstances." *Cassell v. Collins*, 344 N.C. 160, 472 S.E.2d 770, 772 (1996). A necessary factor in proving negligence is the existence of a duty of care owed to the particular plaintiff by the defendant. *Pinnix v. Toomey*, 242 N.C. 358, 87 S.E.2d 893, 897 (1955) ("Actionable negligence presupposes the existence of a le-

---

1. Wachovia argues that this case is indistinguishable from *National Council of the Churches of Christ v. First Union National Bank*, No. 97–1851, 1998 WL 416744 (4th Cir. July 22, 1998). *First Union* applied *Donmar* and held that state law claims based on conduct before the Fedwire transfer, such as opening an account, are preempted by Subpart B:

   [Plaintiffs'] state law claims all arise out of their losses suffered when [the defendant bank] transferred the [funds].... Were it not for the alleged unauthorized transfer, [plaintiffs] could not be heard to complain as they would have suffered no damages.... [Plaintiffs] cannot compartmental-

   ize and detach [their] state causes of action simply because certain of [defendant's] activities occurred before the transfer when such causes of action would not have been available minus the resulting transfer.

   *Id.* at *3–*4 (paragraph break omitted). *First Union* is a nonbinding unpublished opinion. *See* 4th Cir. Local Rule 36(c). We moreover find *First Union's* reasoning unpersuasive. We think the better approach to a question of Regulation J preemption, as *Donmar* instructs, is to determine straightforwardly whether a state law cause of action is inconsistent with or duplicative of the rules established in Subpart B of Regulation J.

gal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law."). We consider whether a bank owes a duty of care to a noncustomer who is defrauded by the bank's customer through use of its services. We cannot find an applicable precedent from a North Carolina court and look to case law from other jurisdictions. We conclude that the North Carolina Supreme Court, if it were to decide this issue, would hold that Wachovia did not owe Eisenberg a duty of care under the facts presented.

Whether Wachovia owes a duty of care to Eisenberg depends on the relationship between them. *See* W. Page Keeton et al., *Prosser and Keeton on Torts* § 53 at 356 (5th ed. 1984) ("It is better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other ...."); *cf. Newton v. New Hanover Co. Bd. of Educ.*, 342 N.C. 554, 467 S.E.2d 58, 63 (1996) (holding nature and scope of duty owed by owner of land depends upon status of injured person as invitee, licensee or trespasser). Eisenberg had no direct relationship with Wachovia. He was not a Wachovia bank customer and, so far as the allegations indicate, has never conducted business with Wachovia. Eisenberg instead transacted with Reid, a Wachovia bank customer.

Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship. *See Weil v. First Nat'l Bank of Castle Rock*, 983 P.2d 812, 815 (Colo.Ct.App.1999); *Volpe v. Fleet Nat'l Bank*, 710 A.2d 661, 664 (R.I.1998); *Miller–Rogaska, Inc. v. Bank One*, 931 S.W.2d 655, 664 (Tex.App.1996); *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 56 Cal. Rptr.2d 756, 760–63 (1996); *Portage Alu-minum Co. v. Kentwood Nat'l Bank*, 106 Mich.App. 290, 307 N.W.2d 761, 764–65 (1981); *Pa. Nat'l Turf Club, Inc. v. Bank of W. Jersey*, 158 N.J.Super. 196, 385 A.2d 932, 936 (1978); *Gesell v. First Nat'l City Bank*, 24 A.D.2d 424, 260 N.Y.S.2d 581, 581–82 (1965).

*McCallum v. Rizzo*, 1995 WL 1146812 (Mass.Super.Ct. Oct. 13, 1995), presents highly analogous facts. Plaintiff McCallum loaned money to the Tsongas Committee, an organization advocating the election of presidential candidate Paul Tsongas. *Id.* at *1. Rizzo, the chief fund raiser for the Tsongas Committee, opened a bank account at Andover Bank bearing the committee's name and listed himself as sole signatory. *Id.* The bank did not verify that Rizzo was authorized to transact business on behalf of the Tsongas Committee. *Id.* Rizzo used the bank account to convert the proceeds of contributions and loans to the Tsongas Committee to his own use. McCallum's funds were converted by Rizzo. *Id.*

McCallum sued Andover Bank on a theory of negligence. He argued that the bank "owed a duty to contributors to the Tsongas committee to exercise due care in the opening and handling of the Tsongas Committee account." *Id.* The *McCallum* court disagreed and followed cases in other jurisdictions which held "a bank's failure to investigate a customer's suspicious activity ... does not give rise to liability to the third party who is injured by the customer's fraud." *Id.* at *2. The court explained:

The mere fact that a bank account can be used in the course of perpetrating a fraud does not mean that banks have a duty to persons other than their own customers. To the contrary, the duty is owed exclusively to the customer, not to

the persons with whom the customer has dealings.

*Id.*

■ Beyond the *McCallum* rule it has been held that banks do not owe a duty of care to noncustomers even when the non-customer is the person in whose name an account was fraudulently opened. In *Software Design* a financial consultant embezzled money from Software Design through a bank account he opened bearing the company name. 56 Cal.Rptr.2d at 759–60. The California Court of Appeal dismissed Software Design's negligence claim against the bank. *Id.* at 760–63. According to the court, "the primary flaw" in Software Design's negligence theory was the lack of a relationship between it and the bank. *Id.* at 760. Even though the bank account used to defraud Software Design bore its own name, the court held that a bank does not owe a duty of care to protect noncustomers against fraud. *Id.; see also Volpe,* 710 A.2d at 664 ("[A] bank is not liable in negligence to a noncustomer payee for having failed to ascertain whether a check paid by it bears the payee's genuine indorsement."). *But see Patrick v. Union State Bank,* 681 So.2d 1364, 1371 (Ala. 1996) (holding bank owed duty of care to person in whose name account was opened to ensure that person opening account is not imposter).[2]

Eisenberg was neither a Wachovia customer nor the person in whose name Reid's fraudulent bank account was opened. Bear Stearns would be the beneficiary of any duty of care which Wachovia might owe to a noncustomer. *See id.* Eisenberg instead falls into the undefined and unlimited category of strangers who might interact with Wachovia's bank customer. In *McCallum* the Massachusetts Superior Court noted that the maintenance of a bank account was intended to benefit the person who opened the account. *McCallum,* 1995 WL 1146812 at *3. The court reasoned that to extend a duty of care to strangers like Eisenberg would be contrary to the normal understanding of the purpose of a bank account and would expose banks to unlimited liability for unforeseeable frauds. *Id.*

Several other courts have relied on similar policy considerations in rejecting an argument that banks owe a duty to noncustomers. *See Software Design,* 56 Cal. Rptr.2d at 763 ("Better that the one contemplating the services of a financial advisor do the background check and then monitor the services. It is that person who has the most control and the most to win or lose, and with whom the investigative tasks should rest."); *Weil,* 983 P.2d at 814 ("It would be unreasonable to require banks to make an independent investigation of their customers' authority to use

---

2. Contrary to Eisenberg's arguments, *Sun 'n Sand, Inc. v. United California Bank,* 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920 (1978), is not analogous to this case. In that case a Sun'n Sand employee fraudulently deposited company checks into a personal bank account at United California Bank ("UCB"). *Id.* at 335. Sun'n Sand sued the bank for negligently allowing the employee, who was not the payee on the checks, to deposit the checks into her account. Although Sun 'n Sand was not a UCB customer, the California Supreme Court held that the bank had a limited duty of inquiry based on the highly

suspicious acts of the employee. *Id.* at 344–45. The court stressed that the duty it was recognizing was "narrowly circumscribed: it is activated only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit." *Id.* at 346. There are no such special circumstances in this case. The act of opening a bank account under a "dba" name is not in itself suspicious enough to give rise to a duty of inquiry.

any particular unregistered trade name; and a duty to inquire only of the customer would not prevent the kind of harm plaintiff suffered."); *Pa. Nat'l Turf Club,* 385 A.2d at 936 ("Plaintiff was the party who assumed the risk associated with that hazardous activity … [and] cannot recoup by attempting to shift responsibility to the bank which had no relationship with it.").

■ We are persuaded by the reasoning articulated in the numerous cases holding that a bank does not owe noncustomers a duty of care. The reasoning and result in *McCallum* are particularly persuasive as the *McCallum* facts are indistinguishable from the facts of this case. We have no doubt that the North Carolina Supreme Court would reach a similar conclusion as that in *McCallum* and hold that Wachovia does not owe Eisenberg a duty of care.

A North Carolina Court of Appeals decision supports our view. In *Carlson v. Branch Banking & Trust Co.,* 123 N.C.App. 306, 473 S.E.2d 631 (1996), plaintiffs executed a $500,000 letter of credit to help fund a stockbroker's purchase of a mutual fund company. *Id.* at 632–34. Plaintiffs intended that the stockbroker would use the letter of credit to obtain a loan to be used solely for the contemplated purchase. *Id.* at 632–33. The stockbroker obtained a loan from the defendant bank but did not use the proceeds as intended. *Id.* at 634. When the stockbroker defaulted on the loan, the bank drew from plaintiffs' letter of credit. *Id.* Plaintiffs sued the bank, alleging a negligent failure to monitor the proper use of the loan proceeds. *Id.* The North Carolina Court of Appeals denied the negligence claim, holding that the bank did not owe plaintiffs a duty of care to monitor the disbursement of the loan proceeds. *Id.* at 636. The court reasoned that, absent a contractual obligation arising from the letter of credit itself, there was no relationship between the bank and the plaintiffs to give rise to a duty of care. *Id.* at 637. *Carlson* suggests that the North Carolina Court of Appeals would not find a duty of care in this case, where there was no direct relationship at all between Eisenberg and Wachovia, much less a contractual obligation.

We hold that Wachovia did not owe Eisenberg a duty of care under the facts of this case. Eisenberg consequently cannot maintain a claim of negligence against Wachovia.

### IV

The district court properly dismissed Eisenberg's complaint with prejudice. Eisenberg's negligence claims are not preempted by Subpart B of Regulation J. The negligence claims are instead dismissed because Wachovia does not owe Eisenberg a duty of care.

*AFFIRMED.*