Mary Hanna HUTCHINS, Plaintiff

v.

MODERN WOODMEN FRATERNAL FINANCIAL a/k/a Modern Woodmen of America, an Illinois Corporation; William D. Keltner, in his Professional Capacity and Individually; Laura McKillip, in her Professional Capacity and Individually; Wells Fargo Bank, N.A., A National Association; Freda Hill a/k/a F.D. Hill; Rochelle Hashaw; and John Does 1–10, Defendants

and

Modern Woodmen Fraternal Financial a/k/a Modern Woodmen of America, an Illinois Corporation; and Laura McKillip, in her Professional Capacity and Individually, Cross–Plaintiffs

v.

Freda Hill a/k/a F.D. Hill, Cross–Defendant.

Civil Action No: 3:13CV230TSL–JMR.

United States District Court, S.D. Mississippi, Jackson Division.

Aug. 16, 2013.

Scherrie L. Prince, Prince & Associates, PLLC, Ridgeland, MS, Terris C. Harris, William Roland, Sweet & Associates PA, Jackson, MS, for Plaintiff.

Wilton V. Byars, III, Catherine Ashburn Hester, Daniel, Coker, Horton & Bell, PA, Oxford, MS, Grover Clark Monroe, II, Eric R. Price, Dunbarmonroe, P.A., Ridgeland, MS, Christopher Daniel Meyer, John M. Lassiter, Burr & Forman, LLP, Jackson, MS, for Defendant/Cross–Plaintiffs.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Mary Hanna Hutchins to remand pursuant to 28 U.S.C. § 1447. Defendant Wells Fargo Bank, N.A. (Wells Fargo) has responded to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that plaintiff's motion is well taken and should be granted.

On November 27, 2012, plaintiff Mary Hanna Hutchins filed suit in the Circuit Court of Holmes County, Mississippi against Modern Woodmen Fraternal Financial a/k/a Modern Woodmen of America (Modern Woodmen) and two of its employees, William D. Keltner and Laura McKillip, and against Wells Fargo seeking to recover compensatory and punitive damages relating to a transaction by which one Freda D. Hill fraudulently obtained $70,000 from an annuity which Hutchins maintained with defendant Modern Woodmen. Hutchins alleges that on December 2, 2011, without her knowledge, Freda Hill used a fraudulent general power of attorney bearing Hutchins' alleged signature and notarized by a Rochelle Hashaw to open a checking account with Wells Fargo bearing both Hill's and Hutchins' names. Later the same day, Hill contacted Modern Woodmen to withdraw funds from Hutchins' annuity with Modern Woodmen. Hill spoke with defendant Keltner and requested that he initiate a wire transfer of $70,000 to the Wells Fargo account that Hill had just opened. Hutchins alleges that Keltner negligently and fraudulently authorized the transfer without first contacting Hutchins to confirm the transaction. Hutchins first learned of the transaction several days later, when she received both a letter from Modern Woodmen notifying her of the partial withdrawal from her annuity and mail from Wells Fargo regarding the checking account she had supposedly recently opened. Hutchins contacted Wells

Fargo and advised that she had not opened an account with the bank, and she contacted Modern Woodmen and advised that she had not authorized the withdrawal from her annuity. According to the complaint, although Modern Woodmen initially represented to Hutchins that it would restore the $70,000 to her account, it failed to do so despite her repeated demands and ultimately advised that it would not return the money to her. She thus filed the present action against Modern Woodmen, Keltner and McKillip,[1] and Wells Fargo, alleging claims for negligence, negligence *per se*, gross negligence, intentional and/or negligent infliction of emotional distress and breach of fiduciary duty, and asserting claims against Modern Woodmen for negligent and/or fraudulent misrepresentation based on its alleged false representation that the $70,000 would be restored to her account.

Hutchins' claim for "negligence and negligence *per se* " is based on allegations that defendants [2] "were negligent in the following particulars":

a. Not following company policy and allowing a wire transfer from Mrs. Hutchins' Modern Woodmen account to a fraudulent account at Wells Fargo; (Defendants Modern Woodmen, Keltner, McKillip and JOHN DPES 1–20);

b. Allowing a checking and savings account to be set up using a fraudulent, unrecorded power of attorney with [sic] approval by Well Fargo [sic] legal department or a telephone call to Mrs. Hutchins to verify her authorization; (Defendants Wells Fargo and JOHN DOES 1–20);

c. other acts of negligence as will be more fully shown at trial.

Wells Fargo removed the case pursuant to 28 U.S.C. § 1441(a), asserting federal question jurisdiction under 28 U.S.C. § 1331 based on its contention that plaintiff's claims for negligence and negligence *per se* relating to the wire transfer are completely preempted by Subpart B of Federal Reserve Board Regulation J (Regulation J), 12 C.F.R. §§ 210.25–210.32 (defining and governing wire transfers).[3] Plaintiff timely moved to remand, asserting that she has not pled any federal claim but rather has pled solely state law claims, and that contrary to Wells Fargo's urging, Regulation J does not completely preempt any of her claims.

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such ac-

**1.** McKillip is identified as an employee and agent of Modern Woodmen but there is no indication as to her role in the alleged transaction or subsequent alleged misrepresentation.

**2.** The court's references herein to "defendants" does not include Freda Hill or Rochelle Hashaw. The court notes that Hill has not been located or served; and the parties have suggested that Hashaw may be a fictitious name for Hill.

**3.** Wells Fargo's arguments reflect its impression that plaintiff has asserted a claim against

it for negligence/negligence *per se* for its role in the wire transfer. It is clear from plaintiff's complaint, however, that the claim of negligence/negligence *per se* relating to the wire transfer is not directed at Wells Fargo but rather at Modern Woodmen and its employees. However, for purposes of plaintiff's motion, the court will assume that Modern Woodmen's rights and obligations in the transaction were subject to Subpart B of Regulation J. *See* 12 C.F.R. § 210.25 (setting forth parties whose rights and obligations are governed by Subpart B of Regulation J).

tion is pending." 28 U.S.C. § 1441(a). Thus, for the district court to have removal jurisdiction, 28 U.S.C. § 1441(a) requires that the case be one over "which the district courts of the United States have original jurisdiction." District courts have original jurisdiction over cases concerning a "federal question," that is, cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

The determination of whether a plaintiff's claim arises under federal law is made by examining the "well pleaded" allegations of the plaintiff's complaint, ignoring potential defenses. Under the well-pleaded complaint rule, " 'a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution....' " *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003) (citations omitted). Thus, "[a]s a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Id. See also Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796, 803 (5th Cir.2011) ("Under the well-pleaded complaint rule, a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint.") (citing *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir.2008)). Because the well-pleaded complaint rule provides that jurisdiction will be determined based solely on the plaintiff's complaint, the rule makes the plaintiff master of her complaint; she may allege only state law causes of action, even when federal remedies might also exist. *Id.* (citing *Bernhard*, 523 F.3d at 551). And if a complaint pleads only state law claims, a federal court generally does not have jurisdiction over that complaint, even

if the defendant asserts a federal defense. *McKnight v. Dresser, Inc.*, 676 F.3d 426, 430 (5th Cir.2012). *See also Gutierrez v. Flores*, 543 F.3d 248, 251–52 (5th Cir.2008)(stating that "there is no federal [question] jurisdiction if the plaintiff properly pleads only a state law cause of action.") (quoting *Bernhard*, 523 F.3d at 551); *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (stating, "That federal law might provide a defense to a state law cause of action does not create federal question jurisdiction."). Accordingly, the assertion of federal preemption as an affirmative defense will not confer federal question jurisdiction. *See McKnight*, 676 F.3d at 430. "Complete preemption," however, as distinguished from "defensive" preemption (i.e., "conflict preemption" or "ordinary preemption"), is a narrow exception to the well-pleaded complaint rule, which recognizes that federal law " 'may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.' " *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir.2000) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). Under the "complete preemption" doctrine, "what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because the federal statute so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir.2008) (internal quotation marks and brackets omitted) (cited in *Elam* ).

In the case at bar, while Hutchins' well-pleaded complaint asserts only state law claims, Wells Fargo argues that her claims for negligence and negligence

*per se* are completely preempted by federal law, and in particular, by Regulation J. To sustain its burden of establishing complete preemption as a basis for federal jurisdiction, Wells Fargo is required to "articulate clearly and with specificity— and to establish—a viable argument for complete preemption." *Copling v. Container Store, Inc.*, 174 F.3d 590, 599 (5th Cir.1999), *overruled on other grounds, Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir.2003). In the court's opinion, it has not done so.

The Federal Reserve Wire Transfer Network, or "Fedwire," is a "funds-transfer system owned and operated by the Federal Reserve Banks that is used primarily for the transmission and settlement of payment orders governed by [12 C.F.R. § 210.25 *et seq.*]." 12 C.F.R. § 210.26(e). Subpart B of Federal Reserve Regulation J, 12 C.F.R. §§ 210.25–210.32, applies to wire transfers that occur via the Fedwire. *See id.* § 210.25(a) ("This subpart provides rules to govern funds transfers through Fedwire...."). The parties herein apparently agree that the subject wire transfer occurred via the Fedwire.

 Subpart B of Regulation J "incorporates the provisions of Article 4A" of the U.C.C. to "provide [ ] rules to govern funds transfers through Fedwire." 12 C.F.R. § 210.25(a), and "governs the rights and obligations of," *inter alia*, "parties to a funds transfer any part of which is carried out through Fedwire...." *Id.* § 210.25(b)(2)(v). Accordingly, the provisions of Article 4A apply to funds transfers using Fedwire via Regulation J. *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274 (11th Cir.2003). Wells Fargo takes the position that these provisions, as incorporated in Regulation J, completely preempt Hutchins' putative state law negligence and negligence *per se* claims. As the basis for this position, it asserts that

"multiple federal courts have concluded that Congress intended for Regulation J to completely preempt state law." In the court's opinion, however, the authorities which Wells Fargo cites are either inapposite or mistaken. The principal cases cited by Wells Fargo for its position are *Donmar Enterprises, Inc. v. Southern National Bank of North Carolina*, 64 F.3d 944 (4th Cir.1995), and *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220 (4th Cir.2002). However, these cases did not involve complete preemption but rather ordinary preemption. *See AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir.2004) (observing that *Donmar* and *Eisenberg* "clearly deal with *ordinary* preemption, rather than the complete preemption that would justify original arising-under jurisdiction"). In *Donmar*, the plaintiff filed suit in federal court and alleged both a federal claim for violation of Federal Reserve Board Regulation J (a claim "arising under" federal law), and state law claims for wrongful payment and negligence. The court dismissed the state law claims, concluding they were "inconsistent with, and therefore, pre-empted by, Regulation J." 64 F.3d at 948 (stating that "any liability founded on state law of negligence or wrongful payment would necessarily be in conflict with the federal regulations and is pre-empted"). The court did not purport to reach the issue of complete preemption and did not characterize Regulation J as completely preempting state law claims.

The court in *Donmar* noted that Regulation J contains a preemption provision, which states:

[R]egulations of the Board may preempt inconsistent provisions of state law. Accordingly, subpart B of this part supersedes or pre-empts inconsistent provisions of state law. It does not affect state law governing funds transfers that does not conflict with the provi-

sions of subpart B of this part, such as Article 4A, as enacted in any state, as it applies to parties to funds transfers through Fedwire whose rights are not governed by subpart B of this part.

Appendix A to Subpart B to Part 210, 12 C.F.R. § 210.25 (1995). The court interpreted this regulation as specifying that inconsistent provisions of state law are pre-empted, while non-conflicting state law is not preempted (e.g., state law governing funds transfers that applies to parties to which the federal Article 4A does not apply); but it ultimately concluded that where the provisions of the federal Article 4A apply (i.e., where Regulation J applies), federal law provides the exclusive remedy and even consistent state law is preempted. 64 F.3d at 949–50.

In *Eisenberg*, as in *Donmar*, there was no mention of complete preemption. The plaintiff in *Eisenberg* filed suit in federal court on the basis of diversity jurisdiction, asserting two claims of negligence, including one relating to the defendant bank's crediting funds from a Fedwire transfer to an account that had been fraudulently opened. After citing *Donmar* for the proposition that "Regulation J preempts any state law cause of action premised on conduct falling within the scope of Subpart B, whether the state law conflicts with or is duplicative of Subpart B[,]" 301 F.3d at 223, the court found that a state law claim premised on the manner in which the bank received and credited the Fedwire funds transfer "would be either duplicative of or contradictory to Regulation J and is thus preempted," *id.* (finding negligence claims preempted "insofar as they challenge Wachovia's Fedwire transfer processing."). Complete preemption was not at issue.

Relying solely on the Fourth Circuit's preemption analysis in *Eisenberg*, the district court in *Utility Supply Co. v. AVB Bank,* No. 10–CV–124–JHP, 2010 WL 4941506 (N.D.Okla. Nov. 30, 2010), one of two other cases cited by Wells Fargo, denied the plaintiff's motion to remand, concluding that since the complaint challenged payment orders and funds transfers that had been accomplished using the Fedwire, then the plaintiff's complaint stated a federal question. *Id.* at *3. The court reasoned that "if Article 4A, as enacted in Regulation J, applies to AVB's challenged actions, then Regulation J preempts the duplicative Article 4A found in Oklahoma state law and this Court has federal question jurisdiction." *Id.* The court did not acknowledge the jurisdictional distinction between complete and ordinary preemption and did not consider whether there was complete preemption.

In contrast to *Utility Supply,* the court in *Bensman v. Citicorp Trust, N.A.,* 354 F.Supp.2d 1330 (S.D.Fla.2005), cited by Wells Fargo, acknowledged that federal jurisdiction over a removed action depends on a finding of complete preemption; but the court then purported to find complete preemption of the plaintiff's putative state law claim for negligence relating to unauthorized wire transfers based on *Eisenberg,* which the court read as specifically holding that "Regulation J completely preempts any state law claims arising from erroneous execution of a Fedwire funds transfer." *Id.* at 1332 (citing *Eisenberg,* 301 F.3d at 223). Yet *Eisenberg* did not purport to find complete preemption, only ordinary preemption. Thus, in substance, none of the authorities on which Wells Fargo relies supports its position.

In contrast to the cases cited by Wells Fargo, the Sixth Circuit in *AmSouth Bank v. Dale* did specifically consider whether Regulation J completely preempted the plaintiff's state law claims relating to a transfer of funds via the Fedwire, and concluded it did not. Specifically, the court held that

the district court erred in holding that Regulation J, a federal regulation promulgated by the Federal Reserve Board, a federal agency, could completely preempt the Receivers' state law claims; only Congress can completely preempt a state cause of action. *See Beneficial Nat'l Bank*, 539 U.S. at 8, 9 & n. 5, 123 S.Ct. 2058 (describing doctrine of complete preemption as when a "federal *statute* completely pre-empts the state-law cause of action"; "Only if *Congress* intended [the statute at issue] to provide the exclusive cause of action ... would the *statute*" completely preempt state law claims; "[T]he proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive." (emphases added)); *Metro. Life Ins.*, 481 U.S. at 66, 107 S.Ct. 1542 (the touchstone of complete preemption is "the intent of *Congress*" (emphasis added)); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 468 n. 11 (6th Cir.2002) ("Without evidence of *Congress's* intent to transfer jurisdiction to federal courts, there is no basis for invoking federal judicial power." (emphasis added)); *Hyzer v. Cigna Prop. Cas. Ins. Co.*, 884 F.Supp. 1146, 1152 (E.D.Mich.1995) (no support for contention that agency regulations could completely preempt area). This conclusion fits in more generally with the balance struck between an agency's ability to promulgate regulations with the force of federal law—and therefore its ability to preempt state causes of action through ordinary preemption—and its *inability* to create a right of action where Congress has not intended it do so. *See generally Alexander v. Sandoval*, 532 U.S. 275, 291, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress

has not."); *Marx v. Centran Corp.*, 747 F.2d 1536, 1544 (6th Cir.1984) ("It is plain that the [agency] is without authority [to create an implied cause of action]. The true question is whether Congress, in enacting [the enabling statute], intended to create a remedy for violations of [the regulation]."), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985). While the agency can create federal law, it cannot expand federal jurisdiction. 386 F.3d at 777.

The Fifth Circuit in *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683 (5th Cir.2001), acknowledged, but found it unnecessary to resolve the question of whether an agency's regulations might achieve complete preemption over a field of state law even though the enabling statute does not itself clearly evidence an intent to do so. *Id.* at 686 n. 8. The court does not appear to have revisited the issue. However, this court finds the *Dale* court's reasoning persuasive.

 Clearly, *ordinary* "[p]reemption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may preempt state regulation." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986). Complete preemption is another matter. *See Bartolome v. Homefield Financial Inc.*, No. CV 09–7258 AHM (AJWx), 2009 WL 4907050, *3 (C.D.Cal. Dec. 11, 2009) (observing that "[a]lthough federal regulations could have the same preemptive effect as federal statutes, ... the extraordinary consequences of complete preemption counsel against finding the requisite Congressional intent when the regulation reflects only the views of an executive branch agency acting without Congressional guidance"); *Bullard v. Southwest Crop Ins. Agency, Inc.*, 984

F.Supp. 531, 537–538 (E.D.Tex.1997) (stating that while "a federal agency acting within the scope of its congressionally delegated authority has the power to preempt state law[,]" " 'it is quite another matter to conclude that an agency may also completely or super preempt an area, thereby allowing an agency to create federal court subject matter jurisdiction where none exists.' " (quoting *Hyzer*, 884 F.Supp. at 1152)). Indeed, in a complete preemption analysis, " 'the question ... is whether *Congress* intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law.' " *Elam*, 635 F.3d at 803 (emphasis added) (quoting *Barrois*, 533 F.3d at 331).

In determining the nature and reach of federal preemption, Congress's intent is the "ultimate touchstone." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). Congress can indicate its preemptive intent either expressly through a statute's plain language, or impliedly through a statute's "structure and purpose." *Altria Group, Inc. v. Good*, 555 U.S. 70, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008). Regardless of how Congress indicates its intent, we begin "with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (internal quotation marks and citation omitted); *Franks [Inv. Co. LLC v. Union Pacific R.R. Co.]*, 593 F.3d [404] at 407 [ (5th Cir.2010) ].

*Id.* at 803–04. The relevant inquiry is what Congress intended, not what the agency intended. *Dale* thus concluded that

[t]he proper inquiry in determining complete preemption is directed to the enabling statute, here the Federal Reserve Act, ch. 6, 38 Stat. 251 (1913) (codified as amended at 12 U.S.C. § 221 *et seq.*). The regulations in question govern wire transfers on Fedwire, the wire transfer system of the Federal Reserve Banks. The regulations were promulgated pursuant to the authority granted by four different sections of the Act: § 11(i) and (j) (12 U.S.C § 248(i) and (j)); § 13 (12 U.S.C. § 342); paragraph fourteen of § 16 (12 U.S.C. § 248(*o* )); and § 19(f) (12 U.S.C. § 464). None of these sections provide specific authority for the Fedwire system—instead, they are general provisions—and none of them reference causes of action having to do with the Federal Reserve system, or any of the markers associated with complete preemption.

386 F.3d at 777.

In the court's opinion, Wells Fargo has failed to demonstrate that the state law claims at issue are completely preempted by Subpart B of Regulation J. Beyond its citation to cases which this court finds to be inapposite or mistaken, Wells Fargo has offered no substantive basis for its assertion that federal jurisdiction is warranted on the basis of complete preemption.[4]

---

**4.** The court expresses no opinion as to whether plaintiff's claims herein would be preempted even under principles of ordinary preemption. Notably, in *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274 (11th Cir. 2003), the Eleventh Circuit found that U.C.C. Article 4A, as incorporated to funds transfers using Fedwire via Regulation J, "is not the 'exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer[,]' " *id.* at 1274–75 (quoting *Sheerbonnet, Ltd. v. Am. Express Bank, Ltd.*, 951 F.Supp. 403, 409 (S.D.N.Y.1995)), and that only claims that were inconsistent with the provisions of Article 4A were preempted, *id.* (citing U.C.C. § 4A–102 cmt., which states that "resort to principles of law or equity outside of Article 4A is not appropriate to

■ Although not asserted as a basis for jurisdiction in its notice of removal, Wells Fargo has argued in its response to plaintiff's motion to remand that plaintiff's negligence and negligence *per se* claim relating to the opening of the Wells Fargo account presents a substantial federal question, on the basis of which this court has "arising under" jurisdiction pursuant to § 1331.[5] Wells Fargo reasons that since the requirements of federally-chartered banks regarding the information required to open an account are governed by 31 C.F.R. § 1020.220, then plaintiff's claim for negligence necessarily asserts a claim for breach of a duty set forth in § 1020.220.

■ The Fifth Circuit has explained that a complaint presents a federal question on its face when it " 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.' " *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir.2008) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "[T]he mere presence of a federal issue in a state cause of action is not sufficient to permit federal jurisdiction;

... the presence of such a federal issue is sufficient to create federal jurisdiction only where: (1) resolving the federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *In re Katrina Canal Breaches Litigation*, 342 Fed.Appx. 928, 932 (5th Cir.2009) (citing *Singh*, 538 F.3d at 337–38). Wells Fargo has failed to establish each of these factors. In effect, it contends only that plaintiff's claim cannot be resolved without examining "multiple federal regulations" that are part of a "complex regulatory scheme overseen by the FDIC and the Department of Treasury", as well as Wells Fargo's own internal policy promulgated pursuant to those regulations. This is not a sufficient basis upon which to predicate jurisdiction. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (finding that state law tort claim which required violation of federal standard to establish *prima facie* case did not require resolution of substantial federal question); *Sullivan v. State Farm and Cas. Co.* 2006 WL 2119320, *3–4

---

create rights, duties and liabilities inconsistent with those stated in this Article"). In that case, Regions asserted state law claims for conversion, unjust enrichment, receipt of stolen property and wrongful set-off against Provident seeking to recover funds transferred via Fedwire which Regions claimed had been fraudulently obtained by the party who initiated the transfer. The court found the claims were not preempted, reasoning that

> Article 4A is silent with regard to claims based on the theory that the beneficiary bank accepted funds when it knew or should have known that the funds were fraudulently obtained. Therefore, a provision of state law that requires a receiving or beneficiary bank to disgorge funds that it

knew or should have known were obtained illegally when it accepted a wire transfer is not inconsistent with the goals or provisions of Article 4A.

*Id.* at 1275.

5. Plaintiff has included in her rebuttal a motion to strike that part of Wells Fargo's response which advances the substantial federal question argument since this was not presented as a basis for jurisdiction in the notice of removal. The court need not consider whether Wells Fargo has properly presented this basis for federal jurisdiction since it is clear to the court that Wells Fargo has failed to demonstrate that there exists a substantial federal question as would support an exercise of federal jurisdiction.

(E.D.La.2006) (finding no federal jurisdiction since "[e]ven though some federal standards and duties might apply to the state law claims, they do not implicate any substantial federal question"); *Richard v. Fleetwood Enterprises, Inc.,* 4 F.Supp.2d 650, 656–57 (E.D.Tex.1998) (explaining that there is a substantial federal question only where an essential issue in the cause of action raises a conflict with the federal standard; no federal jurisdiction based on mere allegation that violation of federal standard is proof of negligence).

Based on the foregoing, the court concludes that Wells Fargo has failed to establish a basis for federal jurisdiction. It is therefore ordered that plaintiff's motion to remand is granted.

