# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2184

_____

National Union Fire Insurance Company of Pittsburgh, PA

*Plaintiff - Appellant*

v.

Yvonne Raczkowski

*Defendant*

Hometown Bank, N.A.

*Defendant - Appellee*

XYZ Corporation, 1-5

*Defendant*

v.

Hometown Bank, N.A.

*Third Party Plaintiff - Appellee*

Mark Leon Henry; Leon Henry; Sheila Henry; Julie Balls; Steve Balls; Investment
Centers of America, Inc.; Jack Howerton; Delbert Phipps; Wayne Roffman

*Third Party Defendant*s

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: June 12, 2014
Filed: August 13, 2014

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

This case stems from fraud committed by an investment advisor who opened a doing-business-as ("d/b/a") bank account using the name of his employer when he did not have the employer's authority to do so. The investment advisor used the d/b/a bank account to steal money from his employer's customers. His employer settled with the defrauded customers, and the employer's insurance company paid the settlements. The insurance company then brought this suit against the bank, alleging that the bank acted negligently by failing to inquire into whether the former advisor had authority to open the d/b/a account. The district court[1] granted the bank's motion to dismiss, concluding that the bank owed no recognized duty to the employer. We affirm.

I.

In 1994, Mark Henry began working for Investment Centers of America, Inc. ("ICA"), which provides investment and insurance products. ICA is insured by National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), the

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

appellant. Henry worked as an investment advisor and agent for ICA in its Carthage, Missouri, branch office.

In November 2004, Henry opened a bank account at Hometown Bank, N.A. ("Hometown Bank"), under the name "Mark L. Henry d/b/a Investment Centers of America." Henry did not have ICA's permission to open the account, and he was the account's only signor. Because it was a d/b/a account, Hometown Bank allowed Henry to accept checks made out to ICA from ICA customers and deposit them into the Hometown Bank account. Henry deposited roughly $292,000 from ICA customers into the account. He later withdrew this money for personal use.[2] Henry's fraud was discovered in August 2006. ICA later settled with the defrauded ICA customers, and National Union paid claims on behalf of ICA because ICA had a policy with National Union.

The only identification Henry provided to Hometown Bank to open the d/b/a account was a driver's license. Hometown Bank claims it believed that Henry was self-employed and acting on his own behalf when it chose to open the d/b/a account for Henry.

II.

National Union filed this diversity case in the Western District of Missouri, alleging that Hometown Bank committed negligence by not confirming with ICA that Henry had the authority from ICA to open the d/b/a account. National Union claims this caused ICA damages resulting from ICA having to settle with customers Henry defrauded. The district court granted Hometown Bank's motion to dismiss, finding

---

[2]Henry also misappropriated ICA customer funds into his Hometown personal bank account.

that Hometown Bank owed no duty to ICA or National Union and therefore National Union failed to state a cause of action. National Union appeals, and we affirm.

III.

The parties agree Missouri law applies to this diversity case. We review a district court's grant of a motion to dismiss *de novo*. Bell v. Pfizer, Inc., 716 F.3d 1087, 1091 (8th Cir. 2013). On review, we "'assume all factual allegations in the pleadings are true and interpret them in the light most favorable to the nonmoving party.'" Id. (quoting Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1033 (8th Cir. 2012)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss is "appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." Ashley Cnty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).

To survive the motion to dismiss, National Union's complaint against Hometown Bank must state a cause of action. In Missouri, "for a plaintiff to make a submissible case of negligence, a plaintiff must establish that there was a duty and that the breach of that duty was the proximate cause of his injury." Hoffman v. Union Elec. Co., 176 S.W.3d 706, 708 (Mo. banc 2005). "In considering whether a duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it and the consequences of placing that burden on defendant." Id. Whether a duty exists is a question of law. Id.

The Missouri Supreme Court has not decided whether a bank has a duty to verify that an individual seeking to open a d/b/a account possesses legal authority to use a particular d/b/a name. When a state court has not decided an issue, this court looks "'to relevant state precedent, analogous decisions, considered dicta, and any other reliable data'" to determine how the Missouri Supreme Court would construe the law. Ashley Cnty., Ark., 552 F.3d at 665 (quoting In re W. Iowa Limestone, Inc., 538 F.3d 858, 866 (8th Cir. 2008)).

## A. Relationship Between the Parties

When analyzing whether a duty exists, Missouri courts start "with an examination of the source of the duty." Parra v. Bldg. Erection Servs., 982 S.W.2d 278, 283 (Mo. Ct. App. 1998) (citation omitted). "The common denominator that must be present is the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." Id. Hometown Bank points out that ICA was never actually the bank's customer because Henry was merely an imposter posing as an agent of ICA. Therefore, the bank argues it never had a relationship with ICA that would impose any duty on the bank. National Union argues that Hometown Bank believed it had a relationship with ICA, and that such a belief is sufficient to establish a relationship between the parties that could serve as the source of a duty owed.

National Union cites Patrick v. Union State Bank, 681 So.2d 1364 (Ala. 1996), for support. In Patrick, an imposter acquired Bridgette Patrick's temporary driver's license. Id. at 1365. The driver's license contained her signature, but did not have her photograph. Id. The imposter opened a bank account in Patrick's name. Id. The bank failed to ask for other photo identification or other identification that would confirm the person opening the account was actually Patrick. Id. The bank employee did, however, compare the signature on the temporary license with the imposter's signature. Id. The signatures did not match, but the bank employee still opened the

account and issued the imposter checks. Id. The imposter then wrote several checks against the account. Id. at 1366. Patrick was eventually arrested for writing bad checks. Id. She sued the bank, arguing that the bank had a duty to confirm a person's identity before opening a bank account. Id.

The Alabama Supreme Court held that the bank owed Patrick a duty of care because the bank believed it had a relationship with Patrick. The court reasoned as follows:

> The bank undeniably thought that it had a relationship with Ms. Patrick when it opened the account for, and gave checks to, an imposter; and the fact that the bank opened a checking account under the name "Bridgette Lashawn Patrick," under Ms. Patrick's Social Security number, and based solely upon the presentation of Ms. Patrick's temporary driver's license as identification, persuades us that there is some relationship between the parties.

Id. at 1369.

We find Patrick persuasive regarding the relative ease of a bank's ability to discern the identity of a natural person. Discerning a person's authority to open a d/b/a account using a particular name, however, is significantly more difficult. Unlike a situation involving a natural person, who carries standard forms of identification, complex laws govern rights to use fictitious names, labels, and other entity monikers, making identification a much more difficult endeavor for a bank. Further, Patrick is somewhat of an outlier, and other courts faced with this issue have held that there is no relationship between the parties that could establish a duty. See, e.g., Zabka v. Bank of America Corp., 127 P.3d 722, 724 (Wash. Ct. App. 2005) ("Many other jurisdictions have held that third party non-customers are not owed a duty of care by a bank, absent a direct relationship or statutory duty."); Weil v. First Nat'l Bank of Castle Rock, 983 P.2d 812, 815 (Colo. App. 1999) (declining "to create

a new common law duty burdening banks and financial institutions with a duty to inquire into a customer's authority to use an unregistered trade name"); Software Design & Application, Ltd. v. Hoefer & Arnett, Inc., 56 Cal. Rptr. 2d 756, 760 (Cal. Ct. App. 1996) (agreeing with "[r]ecent cases [that] have held that absent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer.").

Hometown Bank also points to Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220 (4th Cir. 2002). In Eisenberg, a man opened a Wachovia bank account in his name d/b/a Bear Stearns. Id. at 222. He had no affiliation with Bear Sterns, but he used the account to obtain funds from victims who believed their money was going to Bear Stearns. Id. One of those victims sued Wachovia, asserting that the bank had acted negligently by failing to investigate the man's authority to open the d/b/a Bear Stearns account. Id. The Fourth Circuit held that the victim was a third party who did not have a relationship with Wachovia, so Wachovia did not owe him a duty. Id. at 225 ("Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship."). The court noted that other cases had also rejected the notion that a bank owed a duty to a non-customer even when that non-customer was the person whose name was fraudulently used to open the account. See id. at 226. In Eisenberg, that particular non-customer would have been Bear Stearns. The court did not reach the question of whether Wachovia owed a duty to Bear Stearns, but nonetheless stated it was "persuaded by the reasoning articulated in the numerous cases holding that a bank does not owe noncustomers a duty of care." Id. at 227.

Hometown Bank believed it was entering into a relationship with an entity named "Investment Centers of America." However, without any Missouri precedent on this issue and the weight of authority suggesting the court should not recognize a relationship between the parties, we decline to find there was a fiduciary relationship between the parties.

B. Imposition of a Duty

National Union argues that, based on the Missouri Supreme Court opinion in Dalton & Marberry, P.C. v. Nationsbank, N.A., 982 S.W.2d 231 (Mo. banc 1998), the Missouri Supreme Court would recognize a bank's duty to ascertain a person's authority for opening a d/b/a account under a d/b/a name. Whether this argument is separate from the relationship question is unclear. What is clear, however, is that the the duty articulated in Dalton & Marberry was materially different and limited in scope when compared to National Union's suggested duty in this case. It is also clear that Dalton & Marberry illustrates the need to have some limiting principle (for example, a customer relationship) in place when recognizing a new duty.

In Dalton & Marberry, an accounting firm staff accountant withdrew blank cashier's checks from the company's account with the bank. Dalton & Marberry, 982 S.W.2d at 232. The bank failed to inquire whether the employee was authorized to obtain these blank cashier's checks. Id. The employee used the checks to embezzle more than $130,000 over five years. Id. The accounting firm sued the bank for negligence. Id. The Missouri Supreme Court concluded that the "bank can be liable for failing to inquire as to the authority" of the employee. Id. at 234. The court stated that a "bank is liable if it fails to inquire as to the authority of an agent of the drawer-depositor who wrongfully diverts the proceeds of a check[.]" Id.

Dalton & Marberry established that banks owe a duty of inquiry to customers; however, we decline to extend that duty further in this case. In Dalton & Marberry, the actual account holder was a legal entity and not a natural person—specifically, a professional corporation was the bank's actual customer and the plaintiff in the action asserting negligence claims. Id. at 232. Such legal entities may maintain bank accounts, and it is standard practice for banks to permit certain authorized persons acting as representatives of the legal entity to withdraw money or write checks on

-8-

behalf of the legal entity. It is hardly surprising, then, that Missouri found that the bank negligently breached a duty to its own customer/account holder (a legal entity with which the bank indisputably had a relationship) by failing to check or verify a purported representative's authority. See id. at 234. In Dalton & Marberry, the bank and the account holder had a relationship, the scope of the bank's duty to verify a representative's authority was easily defined and narrow in scope, and the nature of the breach of that duty was rooted in and consistent with the law of negotiated instruments in Missouri.

In the current case, National Union suggests that Hometown Bank had a duty to investigate whether ICA had given Henry the authority to open the d/b/a account. This proposed duty is not like the one in Patrick, where the court said a bank has a duty to inquire into the identity of a person opening a bank account, which is typically easy to ascertain.[3] See Patrick, 681 So.2d at 1366. This proposed duty is also not like the Missouri Supreme Court's articulation of the duty of inquiry in Dalton & Marberry, where the court said that a bank also has a duty to inquire into the authority of a bookkeeper to withdraw cashier's checks from a business's account. 982 S.W.2d at 234. Rather, National Union's suggestion that Hometown Bank investigate Henry's authority to use the name "Investment Centers of America" is broad in scope and admits of no practical limitation. We are hesitant to recognize such a duty in any event and are particularly hesitant to recognize such a duty in the heavily regulated and statutory laden fields of banking and negotiated instruments.

Although National Union suggests Hometown Bank should have verified with ICA Henry's authority to use the name, it is no simple matter to identify who exactly holds rights in a name, trademark, or trade name. And, National Union proffers no

---

[3]In this case, for instance, Hometown Bank verified Mark Henry's identity by looking at his driver's license.

explanation as to where the asserted duty might end.[4]  Essentially, if we followed National Union's proposal, we would be requiring Hometown Bank to verify, as to the world at large, whether there were any entities identically or similarly named "Investment Centers of America," and once those entities had been ascertained, whether Henry had the authority from any of those entities to open the d/b/a account. The scope of this duty could be particularly burdensome in some cases, and imposing the duty may not even generate the result National Union seeks because small differences, such as name or location difficulties, may prevent a bank's search from even locating the correct d/b/a entity. The Colorado Court of Appeals refused to recognize a similar duty in  Weil, 983 P.2d at 815, and the Fourth Circuit rejected a similar duty in Eisenberg, 301 F.3d at 226.  Importantly, our rejection of such an ill-defined and potentially broad duty is consistent with the Missouri Supreme Court's focus on the "magnitude of the burden" as a factor to consider when assessing the existence of a duty.  Hoffman, 176 S.W.3d at 708.

We must apply the law as we believe the Missouri Supreme Court would, see Ashley Cnty., Ark., 552 F.3d at 665, and we are not convinced that the Missouri Supreme Court would extend the duty articulated in Dalton & Marberry to cover the

---

[4]Notably, at oral argument, National Union's counsel could not articulate exactly how the bank could fulfill this duty.  National Union claims that Hometown Bank could have (1) contacted someone other than Henry at ICA to verify Henry's authority; (2) required a resolution from ICA that Henry had authority to open the account; or (3) contacted the Missouri Secretary of State's office to confirm that Henry was registered to do business as "Investment Centers of America."  However, it remains unclear what exactly the scope of that inquiry into the identity of the d/b/a entity should be.  Further, we note that ICA's formal name is "Investment Centers of America, Inc." and that  Henry's d/b/a account omitted the "Inc."  It is possible, therefore, that National Union is suggesting the proposed duty encompass even entities with similar, but not exact, names, further expanding the breadth of a search the bank would be required to undertake.  While Hometown Bank may have done more, we may not base our recognition of a legal duty upon what, in hindsight, might have been prudent for the bank to have done in a particular instance.

-10-

misuse of the d/b/a account in this case.  The burden of imposing this ill-defined and undisputedly broad duty is simply too great in this context.  <u>See</u> <u>Hoffman</u>, 176 S.W.3d at 708.

IV.

We affirm the judgment of the district court.

_____