

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| THE PUBLIC SCHOOL RETIREMENT SYSTEM OF MISSOURI, | ) ) ) | **WD85795 Consolidated w/ WD85860** |
| | ) | |
| Appellant-Respondent, | ) ) | **OPINION FILED:** |
| | ) | **October 24, 2023** |
| v. | ) | |
| | ) | |
| REGIONS BANK INC., | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Daniel Green, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, W. Douglas Thomson, Judge, and, Andrea Ravens Vandeloecht, Special Judge

Regions Bank, Inc. ("Bank") appeals the judgment of the Circuit Court of Cole County, Missouri ("trial court"), finding, following a jury trial, that Bank breached its contract with The Public School Retirement System of Missouri ("PSRS") by repaying PSRS only the amount that was in one of Bank's accounts purportedly opened by one of PSRS's disability benefits recipients after the parties learned of the recipient's death; the judgment granted PSRS the value of the entire amount of benefits payments Bank received

via direct deposit over the course of twenty-one years, plus pre-judgment interest for a total amount of $481,304.75.[1] On appeal, Bank argues that the trial court erred in: (1) denying Bank's motion for directed verdict and motion for judgment notwithstanding the verdict because PSRS failed to present a submissible case for breach of contract in that it presented no evidence of the NACHA rules, which the contract incorporated by reference; (2) denying Bank's motion for directed verdict and motion for judgment notwithstanding the verdict because the contract was forged and therefore void; (3) denying Bank's motion for directed verdict and judgment notwithstanding the verdict because PSRS did not show that it had performed under the contract; and (4) awarding pre-judgment interest from the date the contract was entered instead of the date of the breach. PSRS filed a cross-appeal that, should we find in favor of Bank on the contract claim, the trial court erred in granting summary judgment to Bank on PSRS's negligence claim, because Bank owed PSRS duties of diligence, inquiry, notification, and repayment and because third-party criminal acts do not preclude bank's liability. We reverse the judgment of the trial court and enter judgment for Bank on all claims pursuant to Rule 84.14.

## Factual and Procedural Background

"Employee" was a Missouri school employee who received disability benefits from PSRS after her retirement in 1968. Employee died in 1969, but her surviving spouse ("Husband") and her daughter (defendant "Coy") did not notify PSRS of her death, and they continued to receive and cash monthly benefit checks and later electronic deposits for

---

[1] Judgment was also entered against co-defendant Marsha Coy. Marsha Coy did not file a notice of appeal and has not filed a brief or otherwise participated in this appeal.

nearly fifty years. In 1997, either Employee's daughter, Coy, or Husband opened a bank account with Bank under Employee's name. Also in 1997, PSRS sent direct deposit forms to all of its benefits recipients, including the deceased Employee. The single-page direct deposit form had a section to be completed by the banks that read, in its entirety:

> I hereby declare and affirm that the undersigned institution agrees to accept payments from The Public School Retirement System of Missouri for direct deposit to the account of the above-named payee. It is understood that these payments will terminate upon the death of the payee. The institution agrees to notify and return to The Public School Retirement System of Missouri any payments received after the death of the above-named payee, in accordance with the applicable clearing house rules.

Either Husband or Coy forged Employee's signature on the direct deposit form, had it signed by a Bank employee, and returned it to PSRS. PSRS then began making direct deposits of Employee's benefits into the account.

In 2018, PSRS learned that Employee had passed away. PSRS notified Bank of Employee's death and sent a reclamation request seeking return of the funds it had deposited with Bank, dating back to the time the direct deposit form was completed in 1997. Bank promptly returned roughly $14,400 from the account that had been opened under Employee's name. This was the entire amount that remained in the account at the time PSRS notified Bank of Employee's death. PSRS sued Bank and Coy (Husband had passed away in the interim) claiming that Bank had breached its contract with PSRS by failing to return all of the funds that PSRS had directly deposited into the Employee's account after her death. PSRS also alleged that Bank had acted negligently by failing to determine whether Employee was alive and by failing to inform PSRS of her death and by failing to return all funds that had ever been deposited into the Employee's account.

3

Bank filed a motion for summary judgment alleging, as to the contract claim, that no contract had been formed due to mutual mistake and that if there had been a valid contract, Bank had fulfilled its obligations because the "clearing-house rules" designated in the direct deposit form referred to the National Automated Clearing House Association Operating Rules ("the NACHA rules"), which only required Bank to return the balance in the account. PSRS had alleged in its petition that the "clearing-house rules" in the Direct Deposit Agreement are the NACHA rules, and neither party disputes that these are the rules referenced in the agreement. Subsection 3.6.3 of the NACHA rules provides that a bank must return the "lesser of: the amount of any payments to which the Receiver was not entitled" or the "amount in the Receiver's account" at the time the request for reclamation is made. As to the negligence claim, Bank argued that summary judgment in its favor was appropriate because Bank owed no duty to PSRS, a non-customer.[2] The trial court granted the motion for summary judgment as to the negligence claim but denied the motion as to the contract claim, and a jury trial was held. The jury found for PSRS and found that Bank was liable for all direct deposits made over the entire course of the account's existence, pursuant to the direct deposit form. Bank appeals.

**Standard of Review**

We review a trial court's denial of a motion for directed verdict and judgment notwithstanding the verdict to determine whether the plaintiff made a submissible case.

---

[2] Bank, in its answer, also pled that the applicable statutes of limitations would pertain to any actions involving the opening of the account or the execution of the direct deposit form as they occurred more than twenty years prior to the filing of the petition.

*Harrell v. Mercy Health Servs.*, 229 S.W.3d 614, 618 (Mo. App. S.D. 2007). "In doing so, we view the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all reasonable inferences that can be drawn from the evidence, while disregarding all unfavorable evidence and inferences." *Id.* at 618-19. "To make a submissible case, the plaintiff must present substantial evidence establishing each and every element of his claim. Substantial evidence is competent evidence from which the trier of fact can reasonably decide the case." *Id.* at 619 (internal citations omitted).

Interpretation of a contract is a question of law, which we review *de novo*. *Newco Atlas v. Park Range Construction*, 272 S.W.3d 886, 891 (Mo. App. W.D. 2008).

Appeals from summary judgment are also reviewed *de novo*. *Hoffman v. Union Elec.*, 176 S.W.3d 706, 707 (Mo. banc 2005),

### Contract Claim

Bank's first point on appeal is that the trial court erred in denying its motion for directed verdict and judgment notwithstanding the verdict because PSRS did not make a submissible case in that it produced no evidence in its case in chief as to the NACHA rules, which the contract that it drafted incorporated by reference, and because under the NACHA rules, Bank fully complied with its obligations under the contract.

As stated above, the three-sentence "SECTION II" of the direct deposit form constitutes the entire agreement between PSRS and Bank and sets forth the parties' obligations as between PSRS and Bank. This contract is the sole basis for PSRS's claim for breach of contract. The obligations set forth in that agreement are: Bank agrees to accept payments from PSRS; it "understands" that payments will terminate upon the death

5

of the payee; and it "agrees to notify and return to [PSRS] any payments received after the death of the named payee, in accordance with the applicable clearing-house rules." PSRS alleged in its petition that the "applicable clearing-house rules" referred to in the contract were the NACHA rules. PSRS failed to place the NACHA rules into evidence during its case in chief, but the applicable portion of the rules was admitted into evidence during the Bank's case.

In its petition PSRS alleged that Bank "undertook and had a duty to determine whether [Employee] was alive and to inform PSRS if she was not alive." PSRS argues that, pursuant to the contract, Bank "agrees to notify and return" any payments received after Employee's death. Even if the provision regarding "notify" provides a contractual duty for Bank to notify PSRS of Employee's death, which is unclear, PSRS adduced no evidence that Bank was aware of her death prior to receipt of PSRS's letter in 2018. PSRS fails to point to any provision of the contract or any rule or regulation that creates an affirmative duty of Bank to determine whether Employee was in fact alive or dead. At best, PSRS can establish an obligation by Bank to notify PSRS if Bank became aware of her death. However, as between these two parties, it is undisputed that it was PSRS that first determined that Employee had died and notified Bank of her death. Therefore, there would be no damages based on Bank's failure to notify due to the fact that PSRS was already aware of her passing before Bank became aware of her death.

The remaining alleged breach of the agreement was Bank's alleged failure to comply with the provision of the contract requiring Bank to return "any payments received after

the death of [Employee], in accordance with the applicable clearing-house rules" and the resultant determination of any damages that arose from that breach.

Contracts are interpreted to give effect to the intent of the parties as expressed "by the natural and ordinary meaning of the language in the contract." *Parker v. Pulitzer Pub'g*, 882 S.W.2d 245, 249 (Mo. App. E.D. 1994). "We interpret the words used in a contract as having their common and ordinary meaning, unless the context makes clear that a technical or special meaning was intended or unless the words used have a special meaning in the parties' trade or business." *Herion Co. v. Taney Cty.,* 514 S.W.3d 620, 626 (Mo. App. S.D. 2017). PSRS does not dispute that the "clearing-house rules" in the agreement refers to the NACHA rules. The NACHA rules specifically provide that reclamation is limited to the *lesser* of the amount of overpayment or the amount in the receiver's account at the time the request for reclamation is made. NACHA Operating rules (2018), Subsection 3.6.3. Bank argued that the language on the deposit form that Bank "agrees to notify and return to [PSRS] any payments received after the death of the named payee," was modified by the words "in accordance with the applicable clearing-house rules." PSRS argued that "in accordance with the applicable clearing-house rules" was merely procedural and either did not include Subsection 3.6.3, which contains the "lesser of" language, or that this particular provision of the rules was negated by the "any payments received after the death of the named payee" language. The trial court apparently found this ambiguous and submitted the case to the jury.

But "[t]he fact that parties disagree over the interpretation of a contract or a provision does not mean the contract is ambiguous." *Parker*, 882 S.W.2d at 249. Both

7

parties agree that this contract incorporates the NACHA rules by reference, and the incorporation of those rules modifies the words that come before it. "[M]atters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in haec verba." *Metro Demolition & Excavating v. H.B.D. Contracting*, 37 S.W.3d 843, 846 (Mo. App. E.D. 2001). Our conclusion as to the meaning of the contract is that "any payments received after the death of the payee," as limited by Subsection 3.6.3, must be returned after a reclamation request. This is the amount Bank returned to PSRS immediately after being notified of Employee's death.

Moreover, PSRS was the drafter of the direct deposit form, and it expressly incorporated the NACHA rules by reference. Therefore, even if the contract were determined to be ambiguous, "the established principle of contract law [is] that any ambiguity in a written instrument should be construed against the party [that] drafted the ambiguous language." *Barry Harbor Homes Ass'n v. Ortega*, 105 S.W.3d 903, 908 (Mo. App. W.D. 2003). If PSRS had intended for Subsection 3.6.3 not to apply, it should have clearly stated that in the agreement.[3] The construction of a contract is a question of law. *Lee v. Bass*, 215 S.W.3d 283, 288 (Mo. App. W.D. 2007). We find that the NACHA rules, including the limitation on reclamations, apply to the contract, and Bank performed its obligations as a matter of law by returning the balance in the account at the time it received

---

[3] Subsection 3.6.4 of the NACHA rules allows the "liability provisions contained within this Section 3.6" to be "altered, amended, or superseded by a written agreement between the Originator [PSRS] and RDFI [Bank] *only if* the agreement clearly and conspicuously states on its face that it is . . . applicable to all payments subject to this section 3.6, notwithstanding any other provision of these rules." (emphasis added). PSRS failed to "clearly and conspicuously" so state.

the notice of Employee's death. The trial court should thus have granted Bank's motion for directed verdict or judgment notwithstanding the verdict.[4] Point I is granted.

Because our ruling on Point I is dispositive, we need not address Bank's points II, III, and IV.

## Negligence Claim

Because we granted Bank's first point on appeal regarding the contract claim, we must address PSRS's cross-appeal, which alleges that the trial court erred in granting summary judgment in favor of Bank on PSRS's negligence claim. PSRS alleged in its petition that Bank "undertook and had a duty to determine whether Employee was alive and to inform PSRS if she was not alive." In its Motion for Summary Judgment, PSRS argued that Bank owed it a duty of "inquiry, notification, and repayment" in that "the parties maintained a pre-existing relationship which involved a foreseeable risk of injury." We agree with the trial court that PSRS failed to establish that Bank owed a non-contractual duty to PSRS, who was not a Bank customer.

---

[4] PSRS argued and produced evidence at trial concerning what it alleges Bank failed to do in 1997, when the Employee account was opened, and acts of Bank prior to that time, i.e., that Bank cashed checks made out to Employee, and pertaining to the direct deposit form executed, all by means of forgery. PSRS also put on evidence that Bank provided PSRS with information in the late nineties that it had in its records regarding Employee's purported address and other information. Finally, PSRS produced one of its own employees who testified as to what she believed the contract meant, even though she was not employed by PSRS when the contact was drafted, and she did not know who drafted it. This evidence was all irrelevant, but it apparently served to confuse the trial court and the jury, as the implication was that Bank knew Employee was dead when it opened the account and accepted benefit payments anyway. However, PSRS's own witness testified that "[Bank] learned of [Employee's] death when PSRS notified them." There was no direct or even circumstantial evidence that Bank was aware of her death prior to the notification by PSRS.

9

"[I]n order for a plaintiff to make a submissible case of negligence, a plaintiff must establish that there was a duty and that the breach of that duty was the proximate cause of his injury." *Hoffman*, 176 S.W.3d at 708. "The judicial determination of the existence of duty rest[s] on sound public policy." *Id.* "In considering whether a duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it[,] and the consequences of placing that burden on defendant." *Id.*

As PSRS points out, Missouri courts have found that banks owe some duty to their customers to prevent unauthorized persons from drawing on the customers' accounts. *See, e.g., Martin v. First Nat. Bank in St. Louis*, 219 S.W.2d 312 (Mo. banc 1949); *Aetna Cas. & Surety Co. v. Lindell Trust Co.*, 348 S.W.2d 558 (Mo. App. 1961); *Dalton & Marberry v. Nationsbank*, 982 S.W.2d 231 (Mo. banc 1999). However, PSRS cites to no Missouri case that extends this duty to people or entities who merely deposit payments into a bank customer's account. Bank cites to *National Union Fire Insurance Company of Pittsburgh v. Raczkowki*, 764 F.3d 800, 804-05 (8th Cir. 2014), an Eighth Circuit diversity case interpreting Missouri law, which, after acknowledging *Dalton & Marberry*, expressly declined to extend the duty to non-customers. *National Union* involved an investment advisor who opened a doing-business-as bank account using the name of his employer when he did not have the authority to do so. *Id.* at 801. The customer used this account to steal money from his employer, cashing checks written to the employer. The court found that the employer was never a customer of the bank, and thus had no relationship that would establish a duty. *Id.* at 803. The court also noted the extensive burden of checking with

10

every possible entity with a same-as or similar name to the d/b/a name on the account, stating, "We are hesitant to recognize such a duty in any event and are particularly hesitant to recognize such a duty in the heavily regulated and statutory laden fields of banking and negotiated instruments." *Id.* at 805.

Moreover, most of the actions or inactions of Bank about which PSRS complains took place in 1997, when or shortly after the account was opened and the direct deposits were initiated, which would have exceeded the applicable statutes of limitations.[5] As applicable to events within the statutes of limitations, not only is PSRS asking this Court to extend a duty to non-customers of Bank, but to impose on banks in general a duty to verify that their customers are alive and are who they represent themselves to be on an ongoing basis, years after the accounts are opened. PSRS fails to produce any statute or regulation establishing such a duty, and we decline to judicially impose this duty on banks in general or Bank in particular. Accordingly, we deny PSRS's first point on cross-appeal. Because of this ruling, we need not address PSRS's second point on cross-appeal, which is that third-party criminal acts do not preclude tort liability for banks.

---

[5] It is of note that PSRS alleges Bank should have known that Employee was deceased and faults Bank for accepting forged documents from Coy and Husband, but in its own petition alleging its own claims against Coy, PSRS cites to numerous documents submitted to PSRS by Coy and Husband in the 1970s through 1990s that it alleged were forged, and PSRS accepted them and failed to determine that Employee was deceased during that time.

11

## Conclusion

For the above-stated reasons, we reverse the judgment of the trial court against Bank and pursuant to Rule 84.14, enter judgment in favor of Bank on PSRS's claims. The judgment against Coy was not challenged on appeal and is not impacted by this opinion.

_____
Gary D. Witt, Judge

All concur